**UNITED STATES, Appellee,**

v.

**Specialist Four Harold MOORE, 317–68–6163, United States Army, Appellant.**

**ACMR 8700123.**

U.S. Army Court of Military Review.

May 26, 1988.

For Appellant: Captain Scott A. Hancock, JAGC (argued); Colonel John T. Edwards, JAGC, Major Russell S. Estey, JAGC, Major Eric T. Franzen, JAGC (on brief).

For Appellee: Captain George R. Gillette, JAGC (argued); Colonel Norman G. Cooper, JAGC, Lieutenant Colonel Gary F. Roberson, JAGC, Major Daniel J. Dell'Orto, JAGC (on brief).

Before the Court Sitting En Banc.

## OPINION OF THE COURT ON RECONSIDERATION

COKER, Senior Judge:

This case is before the court sitting as a whole for reconsideration of the prior decision of a panel of the court. Reconsideration was ordered on the court's own motion in view of the exceptional importance of the issue involved. Appellant was convicted by a panel of officer members of attempted murder and attempted wrongful appropriation of a motor vehicle, operating a motor vehicle while drunk (two specifications), wrongful appropriation of a firearm valued at more than $100.00 (two specifications), robbery (two specifications), wrongful appropriation and assault (two specifications, lesser included offenses of robbery), aggravated assault (four specifications), and assault consummated by a battery, violations of Articles 80, 111, 121, 122, and 128, Uniform Code of Military Justice, 10 U.S.C. §§ 880, 911, 921, 922, and 928 (1982) [hereinafter UCMJ]. The adjudged sentence of confinement for twelve years, total forfeitures, and reduction to the grade of Private E–1 was approved by the convening authority. On direct appeal, four issues were raised: failure of the military judge to require trial counsel to explain his peremptory challenge against a panel member of appellant's minority race, under *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986); improper selection of enlisted members to the panel; [1] failure of the Article 32, UCMJ, investigating officer to submit a complete report of the investigation; and failure of the military judge to instruct the members on the defense of partial mental responsibility. The original opinion of the court held that the *Batson* rule does apply to courts-martial and that appellant had established a *prima facie* case of discrimination, and therefore ordered a limited hearing to allow the government to rebut appellant's allegation. *United States v. Moore*, ACMR 8700123 (A.C.M.R. 17 Dec. 1987), *vacated*, 13 January 1988.[2] The opinion did

---

1. This issue was litigated at trial. Because the military judge's resolution of the problem was unsatisfactory to the defense, appellant withdrew his request for a panel including enlisted members.

2. Judge Smith has attached the original opinion as an appendix to his dissent. We emphasize that that decision was vacated and is not an opinion of this court.

not address the other issues raised by appellant.

## I. Facts regarding the *Batson* issue.

The members of the panel, not including those persons detailed but excused, were Colonel (COL) B.H., COL J.T., Lieutenant Colonel (LTC) R.W., Major (MAJ) J.H., MAJ N.H., Captain (CPT) C.G., and CPT C.S. The military judge began *voir dire* of the panel with preliminary questions. Colonel B.H. apparently knew some of the details of the case. Captain C.S. and CPT C.G. were serving as court members for the first time. Colonel B.H., COL J.T., and LTC R.W. had served as trial or defense counsel at some time in the past. Lieutenant Colonel R.W. and CPT C.S. had previous dealings with parties to the trial. Captain C.S. had received legal advice from trial or defense counsel. Trial counsel asked a series of questions directed to all of the members geared to introduce them to the government's theory of the case and a few general questions regarding sentencing.

Appellant's civilian defense counsel (IDC) had previous court-martial experience and had represented clients at courts-martial in which LTC R.W. and MAJ J.H. had sat as court members. Appellant's civilian counsel asked each member to list his length of service, duty position, and home town. Of those members who had previously served as court members, only LTC R.W. had not served on a general court-martial panel. Of the panel members who had served on prior courts-martial, only COL B.H. had sat as a member in a case involving a violent crime. Captain C.S. was the only member who had contact with trial counsel outside the courtroom. Colonel B.H. and CPT C.S. both had personal property stolen from them. Appellant's civilian counsel asked all members if "the fact that several of the alleged victims in this case are white and [appellant] is black [will] effect you in your deliberations at any point in the trial". All members replied that it would not. Most of the members had heard or read some news about appellant's case. Colonel B.H. had some knowledge in the field of alcohol abuse. Only CPT C.S. thought he could not consider no punishment as a sentence if appellant were found guilty of some or all of the offenses.

Several members were questioned individually. Colonel B.H. remembered the news accounts of the crimes at issue only vaguely. As assistant chief of staff, the ADCO section was under his management. Additionally, COL B.H.'s father and brother were alcoholics. Colonel B.H. did not think his experience with them would affect his deliberations. Lieutenant Colonel R.W. had been called as a panel member in a prior case in which appellant's civilian counsel served as defense counsel, but had been challenged off the panel. Captain C.S. had occasionally obtained legal advice from the trial counsel. He appeared to believe that, if appellant were found guilty of the assault offense using the pistol as a club, he could not realistically consider adjudging no punishment. After further explanation by the military judge, CPT C.S. stated that he could in fact consider adjudging no punishment. Colonel J.T., a Medical Service Corps officer, did not have any medical expertise. Colonel J.T. only vaguely remembered hearing or reading about the crimes at issue.

Defense challenged CPT C.S. for cause because of his responses to questions pertaining to sentencing. After discussion, the military judge denied the challenge. The government peremptorily challenged MAJ J.H., and the defense peremptorily challenged CPT C.S., stating that had the challenge for cause been granted, defense would have peremptorily challenged COL J.T. instead.

Defense counsel requested that "the military judge assure himself that the challenge for cause [sic] against Major J.H., who is black, is not for any impermissible discriminatory basis." Appellant's civilian defense counsel noted that CPT C.G. was also black, and remained on the panel, and that in *Batson,* all black veniremen had been stricken from the panel. Defense counsel stated that, given that trial counsel had conducted no individual voir dire of MAJ J.H., there was no apparent basis for striking him from the panel except for

race. Trial counsel stated that "if the concern is an articulation by the government as to the reason for their peremptory [challenge] ... the government wouldn't have any problem in this particular case articulating such a reason for its challenge of Major J.H." After obtaining a copy of *Batson* and reading it, the military judge asked for the government's position. The government felt it had no responsibility to disclose its reasons, but had no objection if the court ordered disclosure. Neither the defense nor the government made further argument.

The military judge noted for the record that there were originally two black panel members on the court, one of whom was challenged, and that the convening authority was black. He found that there was no requirement for the government to disclose its reasons under current law, even taking *Batson* at face value as being applicable, because he did not find that appellant had made out a *prima facie* case. The military judge next noted that the prosecutor had exercised a peremptory challenge to remove a member of appellant's race, and that peremptory challenges by their nature did constitute a jury selection practice that allows discrimination by those of a mind to discriminate. After stating the last criterion, that "[t]he defendant must show that such facts and any other relevant circumstances raise an inference that the prosecutor used a peremptory challenge to exclude the venireman from the petit jury on account of their race," the military judge stated without explanation that this requirement had not been met. The military judge therefore did not require trial counsel to explain his reasoning, but offered him the opportunity to do so, in order to protect the record. Trial counsel declined the offer, stating that the principle of the peremptory challenge was that it was at counsel's discretion.

## II. The Background of the *Batson* Decision.

For more than a hundred years, it has been held that intentional exclusion of individuals from juries on the basis of race violates the Equal Protection Clause. *See*

*Strauder v. West Virginia*, 100 U.S. (10 Otto) 303, 25 L.Ed. 664 (1880). Such discrimination "violates a defendant's right to equal protection because it denies him the protection that a trial by jury is intended to secure." *Batson v. Kentucky*, 476 U.S. 79, 86, 106 S.Ct. 1712, 1717. The "protection" afforded an accused in a trial by jury is the guarantee of an impartial jury selected from among his peers and equals in the district where the crime was committed. When a person or easily recognizable group of persons is denied this protection, that person or group is subject to deprivation of life or liberty without due process of law; that person or group is denied the equal protection of law. "The very idea of a jury is a body of men composed of peers or equals of the person whose rights it is selected or summoned to determine; that is, of his neighbors, fellows, associates, persons having the same legal status in society as that which he holds." *Strauder*, 100 U.S. at 308. When "every white man is entitled to a trial by jury ... selected without discrimination against his color, and a negro is not, [it cannot be said that] the latter is equally protected by the law with the former." *Strauder*, 100 U.S. at 309.

A distinction between exclusion of blacks from jury venires and exclusion of blacks from the petit jury was drawn by the Supreme Court's decision in *Swain v. Alabama*, 380 U.S. 202, 239, 85 S.Ct. 824, 846, 13 L.Ed.2d 759 (1965) (Goldberg, J., dissenting). The Court distinguished the selection of a jury venire vis-a-vis of a petit jury, as an action solely of the state, and therefore, any racially discriminatory action in the selection of the venire could be imputed to the state. Based on the long history and importance of the peremptory challenge, the Court decided that "[t]o subject the prosecutor's challenge in any particular case to the demands and traditional standards of the Equal Protection Clause would entail a radical change in the nature and operation of the challenge." *Swain*, 380 U.S. at 221–22, 85 S.Ct. at 836–37.

"The presumption in any particular case must be that the prosecutor is using the State's challenges to obtain a fair and

impartial jury to try the case before the court. The presumption is not overcome and the prosecutor therefore subjected to examination by allegations that in the case at hand all Negroes were removed from the jury or that they were removed because they were Negroes. Any other result, we think, would establish a rule wholly at odds with the peremptory challenge system as we know it."

*Swain*, 380 U.S. at 222, 85 S.Ct. at 837.

To overcome the presumption, the Court required that a defendant prove that, by state action and responsibility, "Negroes are excluded from juries for reasons wholly unrelated to the outcome of the particular case on trial and that the peremptory system is being used to deny the Negro the same right and opportunity to participate in the administration of justice." 380 U.S. at 224, 85 S.Ct. at 838. The prosecutor in *Swain* struck all six black veniremen, and the appellant had demonstrated that no black had sat on a petit jury in that county in living memory. Nevertheless, the Court found that appellant had not met his evidentiary burden for making out a *prima facie* case of discriminatory intent because he had not shown that the state, rather than the accused or the particular situation of the trial, was responsible for the general exclusion of blacks from the petit jury.

The dichotomous treatment of exclusion from the jury venire and exclusion from the petit jury was ended by the landmark decision in *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712. After much criticism of its decision in *Swain*, and ample demonstration that blacks were being systematically excluded from the petit jury through the use of the peremptory challenge, the Supreme Court determined that the procedure formulated in *Swain* had for all practical purposes made the peremptory challenge sacrosanct. Accordingly, a new procedure was formulated by which to determine if peremptory challenges were being used to intentionally discriminate on the basis of race, and thus deny an accused due process of law (in the federal system) or the equal protection of the law (in state systems).

[T]he *defendant* first must show that he is a member of a cognizable racial group, and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race.

Second, the defendant is entitled to rely on the fact, as to which there can be no dispute, that peremptory challenges constitute a jury selection practice that permits 'those to discriminate who are of a mind to discriminate.' Finally, the *defendant* must show that these facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude the veniremen from the petit jury on account of their race. This combination of factors in the empanelling of the petit jury, as in the selection of the venire, raises the necessary inference of purposeful discrimination.

476 U.S. at 96, 106 S.Ct. at 1723 (citations omitted) (emphasis added).

■ In determining whether a defendant has made a *prima facie* showing of discrimination, "the trial court should consider all relevant circumstances," including, but not limited to, identifying a pattern of strikes against black jurors and the prosecutor's manner of exercising *voir dire* and challenges. *Id.* at 96–97, 106 S.Ct. at 1722–1723.[3]

Once the defendant makes a *prima facie* showing, the burden shifts to the State to come forward with a neutral explanation for challenging black jurors.... [T]he prosecutor [may not] rebut the defendant's case merely by denying that he had a discriminatory motive or 'affirming his good faith in individual selections.' ... The prosecutor therefore must articulate a neutral explanation related to the

---

3. In discussing the role of *voir dire* as part of a *prima facie* case, it is important to bear in mind the purpose of *voir dire*. Historically, that purpose has been to elicit information from a potential petit juror, upon which counsel can predicate their peremptory challenges. *Swain*, 380 U.S. at 216 n. 19, 218–19, 85 S.Ct. at 833 n. 19, 834–35. Conversely, in courts-martial, *voir dire* is used chiefly to determine if there is a basis for a *challenge for cause*.

particular case to be tried. The trial court then will have the duty to determine if the defendant has established purposeful discrimination.

*Id.* at 97–98, 106 S.Ct. at 1723–1724 (citation and footnotes omitted).

■ Since evaluation of a prosecutor's rationale for challenging a particular member is largely one of credibility, reviewing courts should give these factual findings great deference. *Id.* at 98 n. 21, 106 S.Ct. at 1724 n. 21. In the event that a defendant establishes a *prima facie* case, and the prosecutor's explanation does not rebut the allegation, the conviction is to be reversed. *Id.* at 100, 106 S.Ct. at 1725. This court fully supports the soundness of these principles and their application, *mutatis mutandis*, to trials by court-martial. That is unquestioned. The scope and application of the procedure formulated by the Supreme Court to the issues in this case concern us here.

### III. Application of the Principles Developed in *Batson* to Courts–Martial.

The basic principles enunciated, i.e., elimination of racially discriminatory challenges, are consistent with and necessary to the proper administration of military justice. "The time is long since past ... when [the Court of Military Appeals] will lend an attentive ear to the argument that members of the armed services are, by reason of their status, *ipso facto* deprived of all protections of the Bill of Rights." *United States v. Tempia*, 37 C.M.R. 249, 253 (C.M.A.1967).

[C]ourts-martial are criminal prosecutions, and those constitutional protections and rights which the history and text of the Constitution do not plainly deny to·military accused are preserved to them in the service. Constitutional due process includes the right to be treated equally with all other accused in the selection of impartial triers of the facts. Methods of selection which are designed

to produce a court membership which has, or necessarily results in, the appearance of a 'packed' court are subject to challenge.

*United States v. Crawford*, 35 C.M.R. 3, 6 (C.M.A.1964) (citations omitted).

■ Article 25, UCMJ, 10 U.S.C. § 825, limits the criteria by which panel members may be selected to age, education, training, experience, length of service, and judicial temperament. Race is not an included criterion in the selection of court-martial members, and certainly is not a proper criterion for exclusion. *Cf. United States v. Crawford*, 35 C.M.R. at 13 (Quinn, C.J.) and 29–30 (Ferguson, J., dissenting). "Discrimination in the selection of court members on the basis of improper criteria threatens the integrity of the military justice system." *United States v. Daigle*, 1 M.J. 139, 140 (C.M.A.1975) (exclusion of junior officers from panels). *See United States v. McClain*, 22 M.J. 124 (C.M.A. 1986) (exclusion of junior enlisted soldiers from panels in order to achieve heavier sentences).

■ By the same token, race may not "be allowed to raise its ugly banner as a criterion for" peremptory challenges. *United States v. Crawford*, 35 C.M.R. at 21 (Ferguson, J., dissenting). Discrimination on the basis of race is abhorrent. It is particularly pernicious in the administration of justice. Accordingly, there is no logic in permitting the prosecutor, through the use of his peremptory challenge, to do what the convening authority, in the selection of panel members, cannot. Therefore, this court finds the basic principles of the *Batson* decision fully applicable to trials by court-martial, and in the exercise of our supervisory responsibility to protect the integrity of the Army court-martial system adopts a procedural method suited to the military justice system to effectuate this decision. *See United States v. Carter*, 25 M.J. 471, 473 (C.M.A.1988).[4]

4. To establish a procedure to protect a constitutional right in no way "creates a presumption that invidious racial discrimination is present," nor creates a specially privileged class as suggested by Senior Judge DeFord. Nor does it "conclude that improper racial factors triggered the trial counsel's use of his peremptory challenge" as presumed by Senior Judge Adamkew-

## IV. Application of the *Batson* Procedure to Courts–Martial.

Application of the specific *procedural formulation* enunciated in *Batson* to trials by court-martial is neither required nor practicable, due to the substantial legal and systemic differences between courts-martial and civil criminal prosecutions.

The constitutional underpinning of the *Batson* decision is that "[p]urposeful racial discrimination in selection of the venire violates a defendant's right to equal protection *because it denies him the protection that a trial by jury is intended to secure." Batson,* 476 U.S. at 86, 106 S.Ct. at 1717 (emphasis added). However, courts-martial are not subject to the jury trial demands of the constitution. *United States v. McClain,* 22 M.J. at 128; *Ex parte Quirin,* 317 U.S. 1, 39–41, 63 S.Ct. 2, 16–17, 87 L.Ed. 3 (1942); *see Reid v. Covert,* 354 U.S. 1, 21, 77 S.Ct. 1222–1233, 1 L.Ed.2d 1148 (1957) ("Every extension of military jurisdiction is an encroachment on the jurisdiction of the civil courts, and, more important, acts as a deprivation of the right to jury trial and of other treasured constitutional protections."); *Ex parte Milligan,* 71 U.S. (4 Wall.) 2, 123, 18 L.Ed. 281 (1866) (The right to trial by jury—"one of the most valuable in a free country—is preserved to everyone accused of crime who is not attached to the army, or navy, or militia in actual service.") Thus, military accused are tried not by a jury of their peers, but by a panel of their best qualified superiors. UCMJ art. 25(d)(1). Civilian juries are drawn from a random cross-section of the community; military panels are selected by the convening authority on a best qualified basis. UCMJ art. 25(d)(2). Clearly, if a service-member has no right to trial by jury under the sixth amendment, then procedural rules designed to protect that right cannot apply to trials by court-martial, even if the procedural rule flows from the fifth amendment. Yet as the procedure is constitutionally nourished, it is appropriate to consider the application to the court-martial system.

In most civilian jurisdictions, the prosecution and the defense are both allowed a substantial number of peremptory challenges,[5] sufficient that one party or the other can pervert constitutional norms by purposefully excluding a segment of society from participation in the administration of justice. *See Batson,* 476 U.S. at 91, 106 S.Ct. at 1720. However, the limitation to one peremptory challenge per side at trials by court-martial[6] prevents their use as a method for "selecting the petit jury" whether it is to exclude a segment of society or to ensure that the jury is impartial.[7] Civilian counsel are provided a large jury venire by a representative of the state, composed of persons from designated groups, such as registered voters or property tax rolls. They then select their petit jury by striking or by challenging numerous persons from their venire. In courts-martial, counsel use their single peremptory challenge not to select a jury, but to preserve or to enforce a challenge for cause, *cf. United States v. Smart,* 21 M.J. 15 (C.M.A.1985); R.C.M. 912(f)(4), or to remove a member that counsel suspects, intuitively or otherwise, will be sympathetic to the opponent's case. Of equal importance, there has been no showing or history

---

icz. Rather, it protects the integrity of the system by insuring that discrimination and special privilege will not become part of the military justice system. Further, it insures that no individual trial counsel will pervert the use of the single peremptory challenge for racial purposes.

5. As the purpose of striking or peremptorily challenging is to *select* the jury *from* the venire made available, numerous challenges are necessary.

6. Manual for Courts–Martial, United States, 1984 [hereinafter M.C.M., 1984], Rule for Courts–Martial [hereinafter R.C.M.] 912(g)(2).

7. In reality, "petit jury" selection for trial by court-martial is done by the convening authority. He is provided a "jury venire" by the Army, composed of personnel assigned to his command. He selects the "jury" from his "venire" by a reverse striking, i.e. by selecting a given number rather than striking all over the given number. The single peremptory challenge therefore may be used to finally form the court-martial panel, but, it is not a jury selection method as exists, and as was discussed by the Supreme Court, in civilian jurisdictions.

of systemic subversion of the system or exclusion of members of minority races from court-martial panels, as has occurred in civilian trials. *See Batson*, 476 U.S. at 100, 101, 106 S.Ct. at 1725, 1726 (White, J., concurring) and 102, 103–104, and 106 S.Ct. at 1725, 1726–1727 (Marshall, J., concurring).

To some extent, stereotypes may form the basis of the intuition for peremptory challenges of minority members, or for judgment of the correctness of a peremptory challenge. Obviously, stereotyping can be illogical and dangerous, whether it be to assess the character of a minority group or to identify the reasons for prosecutorial action. For example, part of the factual history of striking presented in *Swain* was contrary to stereotype and formed a basis of the Court's finding that exclusion of blacks from the petit jury was not necessarily a result of state action.[8] We do not condone the use of stereotypes for any purpose within the court-martial system.

■ Because of the differences between courts-martial and other criminal trials, both legal and systemic, the specific procedural formulation adopted in *Batson v. Kentucky, supra*, to address purposeful racial discrimination in the exercise of peremptory challenges does not apply to courts-martial.

## V. Procedure Applicable to Courts–Martial.

■ The limitation at courts-martial to one peremptory challenge per party would render the burden of establishing a *prima facie* case under the *Batson* decision intolerably high. Most of the factors used to establish a *prima facie* case relate to use of a number of peremptory strikes. *See Garrett v. Morris*, 815 F.2d 509 (8th Cir. 1987); *Ward v. State*, 293 Ark. 88, 733 S.W.2d 728 (1987); *Williams v. State*, 507 So.2d 50 (Miss.1987) (striking of all blacks from a venire); *United States v. Cartlidge*, 808 F.2d 1064 (5th Cir.1987); *Gamble v. State*, 257 Ga. 325, 357 S.E.2d 792 (1987);

*Keeton v. State*, 724 S.W.2d 58, 65 n. 5 (Tex.Crim.App.1987) (striking of most black veniremen). Disproportionate impact would be difficult, if not impossible to demonstrate. Few of these quasi-numerical tests would be of any use at courts-martial. *See, e.g., United States v. Cloyd*, 819 F.2d 836 (8th Cir.1987); *United States v. Chalan*, 812 F.2d 1302 (10th Cir.1987) (striking of only or last remaining juror of defendant's race). Thus, military accused would be left to rely on the nature and tone of *voir dire, see State v. Alvarado*, 226 Neb. 195, 410 N.W.2d 118 (1987); *People v. Wheeler*, 22 Cal.3d 258, 148 Cal.Rptr. 890, 905, 583 P.2d 748, 764 (1978), racial overtones inherent in his particular case, *see People v. Turner*, 42 Cal.3d 711, 230 Cal. Rptr. 656, 726 P.2d 102 (1986) (black defendant, white victims), and other general facts and circumstances in the case. These factors alone, in the absence of the ability to examine a pattern of strikes, generally will not provide sufficient information from which discriminatory intent may be inferred. Therefore, in those cases where the accused is a member of a recognized racial group and the government peremptorily challenges a member of the court-martial panel who is also a member of the accused's racial group, we will require only that the accused state an objection to the prosecutor's peremptory challenge. The accused may present, as part of the objection, any evidence supporting the objection. The government will be required to provide an explanation for the challenge, notwithstanding the absence of defense evidence supporting the objection and without regard to the merits of any defense evidence. This procedure insures that the defense has an opportunity to present evidence of prosecutorial misconduct or to rely on the *per se* rule in the absence of such evidence.

Use of this *per se* rule may appear to be too much of an encroachment on the use of the peremptory challenge. For two reasons, we are satisfied that this approach is appropriate to military practice. First, mil-

---

8. Evidence was presented that minority members were stricken from the venire by or at the request of the defense.

itary communities are small ones. Unlike the situation in the civilian context, trial and defense counsel are usually familiar with the court members, have had the opportunity to work with some of them in some capacity, or observed at least some of them in prior trials. Some members will be known to counsel by way of reputation for being particularly lenient or harsh, for having a law enforcement background, etc. This familiarity with the court members will make the burden on military trial counsel to articulate race neutral reasons for the exclusion of a single minority member less difficult than that imposed on their civilian counterparts, who are exposed to each venireman only briefly. Secondly, this *per se* rule requires no balancing of factors, no evidentiary hearing, and no need for later review of a trial judge's *prima facie* determination. The simplicity of this rule leaves no room for error, and no doubt that minority accused can adequately raise the issue.[9]

Once the objection is made, the trial counsel will explain the reason for his challenge. In this respect, we will limit the level of scrutiny into the reasons provided. In the civilian context, some jurisdictions analyze the government's explanation of its challenges more closely than others. *Compare United States v. Cartlidge, supra* (court accepted at face value a prosecutor's affidavit that one challenged minority member avoided eye contact and that another was a low income divorcee) *with Garrett v. Morris, supra* (court did not accept a prosecutor's explanation that he had peremptorily challenged black veniremen who were *not well educated*, given the fact that

the prosecutor did not strike similarly situated whites). *See also Gamble v. State,* 357 S.E.2d at 794–95 ("The rubber stamp approval of all nonracial explanations no matter how whimsical or fanciful, would cripple *Batson's* commitment to 'ensure that no citizen is disqualified from jury service because of his race' " and the persuasiveness of the explanation may be magnified or diminished by the strength of the *prima facie* case.). While the military judge must give due deference to the government representative as an officer of the court, we neither expect nor desire a rubber stamp approach.

 Accordingly, this court expects that military judges will ensure that the reasons provided by counsel are clearly stated for the record. The military judge should use appropriate trial procedures to best protect the privacy interests of the challenged member.[10] After counsel's reasoning is properly clarified,[11] the military judge will rule on the issue and make findings of fact. If a reasonable, racially neutral explanation is not presented, the peremptory challenge will be disallowed, and trial counsel may challenge a different member. As the issue hinges on credibility of the explanations provided, great deference will be given to the trial court's findings, *see United States v. Cloyd; United States v. Forbes,* 816 F.2d 1006 (5th Cir. 1987), subject to review for abuse of discretion.

## VI. Application to the Case *Sub Judice.*

 Because the *Batson* procedural formulation does not apply directly to trials

---

9. Contrary to Senior Judge DeFord's harbinger of Pandora, the burden on the military judge will be reduced by a procedure adopted to the unique requirements and characteristics of the military. It is the attempt to mirror civilian procedures, to graft incompatible systems that increase burdens and cause legalistic errors.

10. As noted previously, there are many possible reasons for peremptory challenges apart from race, particularly in a military environment. These reasons may be based on rumor, hearsay, or other matters a trial counsel may be understandably reluctant to state publicly; or the reason may be purely intuitive and therefore difficult to articulate. In any event, it would cer-

tainly not be inappropriate if spectators are present to have the trial counsel state his reasons at a side-bar conference.

11. In the normal case we see no reason for, and therefore discourage, an evidentiary proceeding for challenging the reason provided by the government. Such a proceeding should not be necessary in order for the military judge to conduct a "sensitive inquiry." Use of the procedure suggested by Senior Judge Adamkewicz would require the government to meet or exceed the standard required for challenge for cause, and far exceeds the guidelines established by the Supreme Court.

by court-martial, and because our adoption of an analogous procedure appropriate to military practice is a new policy, application need not be retroactive. However, since the general principles enunciated in *Batson* do apply to courts-martial, and so as not to disadvantage appellant, we will consider his case under the *Batson* procedural rule, and in addition will apply our procedure.

The strongest factor which can be identified to support an inference of discrimination is that, in a pretrial statement, appellant referred to his victims as "redneck pussies," an obvious indication that at least some of his victims were white.[12]

An equally strong factor that denies any inference of discrimination was defense counsel's initial statement when raising the issue: "We are not averring that the government has made an improper challenge on discriminatory constitutionally impermissible grounds, we are merely stating that that is the appearance." Such statement appears to negate the existence of any other "relevant facts or circumstances," and shifts the *defense* burden, *Batson*, 476 U.S. at 96, 106 S.Ct. at 1722, to the government.[13]

■ In addition, there are several race neutral factors found in the record of trial that support the challenge. The trial counsel did not attempt to develop a challenge for cause against either black member of the panel. Therefore, he made no blatant attempt to achieve a monochromatic panel. Major J.H. recognized the civilian defense counsel from other trials and also recognized the trial counsel as V Corps' trial counsel. Lastly, trial counsel initially offered to provide a race-neutral explanation for his challenge of MAJ J.H., but was halted by the military judge. After the judge ruled that no *prima facie* case of discriminatory intent had been established, trial counsel declined the opportunity to state his reasons and thus "protect his record." [14]

■ The military judge found as fact that a *prima facie* case of discrimination had not been established. He did not ask defense counsel to articulate the facts and circumstances on which he relied in making the objection, and did not make specific findings of fact. He did, however, properly note the *Batson* factors and made his ruling based on the assumption that the decision was applicable to courts-martial. He had the opportunity to observe the tone of trial counsel's questions, the responses and demeanor of MAJ J.H., and the appearance of any hostility between the two men. Finally, the military judge had available to him evidence regarding the selection policies and procedures of the convening authority and materials considered by the convening authority in selecting the panel. Based on these factors, and our own review of the record, we find no abuse of discretion in the military judge's resolution of the issue.

Applying this court's procedure for trials by court-martial and to ensure compliance with *Batson* principles, the court ordered that the government trial counsel provide an affidavit [15] explaining the basis for his

---

12. We do not, in this particular case, regard the lack of individual *voir dire* of the challenged member as an inference of discriminatory intent. Trial counsel's *voir dire* was general, directed at determining any hostility towards the government's theory of the case, and demonstrated no racist attitude. Given that trial counsel did not question *any* of the members individually, his failure to question MAJ J.H. individually is not relevant. *See State v. Alvarado*, 226 Neb. 195, 410 N.W.2d 118 (1987). *See also*, n. 1, *supra*.

13. Judge Smith's original opinion in the case is flawed for the same reason. In stating that "[t]here is nothing in the *voir dire* in this case to show any reason for the peremptory strike" and "[i]n the absence of any basis in the record for such rulings," he placed the initial burden on the government contrary to the rule of *Batson*.

14. Although a prosecutor's mere assertion that his reasons were race-neutral would not be sufficient to rebut a *prima facie* case, trial counsel's initial offer to provide his reasons, which was rejected by the military judge, in this case at least demonstrates that his later refusal was not inspired by bad faith.

15. The use of an *ex parte* affidavit under these circumstances is an acceptable appellate practice, *United States v. Crawford*, 35 C.M.R. at 6 (Quinn, C.J.), and may even be obligatory, *United States v. Crawford*, 35 C.M.R. at 23–24 (Ferguson, J., dissenting). Further, it is not the affidavit of an "affected litigant," that is the

peremptory challenge for review by this court. His response provided a reasonable, racially neutral explanation for the challenge, with no indices of racial motivation. We find, therefore, that the government's peremptory challenge was exercised in accordance with constitutional principles and the procedure established by this court.

The remaining alleged errors have been considered and found to be without merit.

The findings of guilty and the sentence are affirmed.

Chief Judge HOLDAWAY, Senior Judge FELDER, Senior Judge De GIULIO, Judge GILLEY, Judge CARMICHAEL, Judge KENNETT, and Judge ROBBLEE concur.

DeFORD, Senior Judge, with whom Judge KANE concurs, concurring in part and dissenting in part:

I agree with the majority that the concept of equal protection of the law which is applied to the sovereign states by virtue of the Equal Protection Clause of the fourteenth amendment and to the instrumentalities of the Federal Government as a consequence of the Due Process Clause of the fifth amendment to the Constitution of the United States is applicable to the Armed Forces of the United States subject to certain exceptions necessitated by conditions of military service. *See Parker v. Levy*, 417 U.S. 733, 94 S.Ct. 2547, 41 L.Ed.2d 439 (1974). The circumstances in this case to a great extent do not fit within those previously established and known exceptions. Furthermore, the concept of equal protection is of paramount importance in creating and maintaining a well ordered and disciplined fighting force.

I

In *Swain v. Alabama*, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965), a case founded upon the equal protection clause, the Supreme Court of the United States considered a case in which it was alleged that there was invidious racial discrimination in the selection of the general jury venire because black persons were excluded from the petit jury through the use of peremptory challenges. The Court held that the petitioner Swain had failed to establish systematic discrimination in the selection of the general jury venire and in the prosecutor's exercise of peremptory challenges. They ruled that, absent a clear showing of systematic discrimination, the presumption in any particular case must be that the prosecutor is using his challenges to obtain a fair and impartial jury and that any other result would establish a rule wholly at odds with the peremptory challenge system. *Swain v. Alabama*, 380 U.S. at 222, 85 S.Ct. at 836. That Court further stated that, with regard to petitioner's claim that black people had been denied the right to sit on petit juries in civil and criminal cases for many years, the record was not sufficient to demonstrate that black persons had been excluded from juries for reasons wholly unrelated to the outcome of a particular case at trial. *Id.* at 224, 85 S.Ct. at 838.

In *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), the Supreme Court reconsidered the doctrine of *Swain v. Alabama* in a case in which the prosecutor removed all four black persons from the jury venire through the application of peremptory challenges. The Court reaffirmed the rule of *Strauder v. West Virginia*, 100 U.S. (10 Otto) 303, 25 L.Ed. 664 (1880), that, while recognizing that a racial minority defendant does not have a right to a petit jury composed in whole or in part of persons of his own race, he is nevertheless denied the equal protection of the laws when the state puts him on trial before a jury from which members of his race were purposefully excluded. *Batson v. Kentucky*, 476 U.S. at 85, 106 S.Ct. at 1716. *Batson*, like *Swain*, held that the state's privilege to strike individual jurors through peremptory challenges is subject to the commands of the Equal Protection Clause. *Id.* at 89, 106 S.Ct. at 1718. As a

appellant or the government, but rather of an individual trial attorney, expressing a personal,

subjective decision.

consequence, prosecutors are forbidden to challenge potential jurors solely on account of their race or on the assumption that black jurors as a group will be unable to consider the state's case against a black defendant. *Id.* The Court in *Batson* noted that a number of lower courts had found that the decision in *Swain* had created a crippling burden of proof upon black defendants attempting to show invidious racial discrimination and had resulted in prosecutor's peremptory challenges being largely immune from constitutional scrutiny. *Id.* at 92 n. 17, 106 S.Ct. at 1720 n. 17. Accordingly, the Court noted that in the years after *Swain* had been decided the Court had recognized that a defendant may make a *prima facie* showing of purposeful racial discrimination in the selection of the venire by relying solely on the facts concerning its selection in a given defendant's case and that a consistent pattern of official racial discrimination in other cases is not a necessary predicate to establish a violation of the equal protection clause. *Id.* at 95, 106 S.Ct. at 1722. The Court then modified the rule in *Swain* with regard to the standard of proof required to establish a *prima facie* case of purposeful invidious racial discrimination.

To establish such a case, the Court stated that the defendant must first show he is a member of a cognizable racial group and that the prosecutor has exercised peremptory challenges to remove members of the defendant's race from the venire. Second, the defendant must show that these facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude veniremen from the petit jury on account of their race. The Court also held that a defendant is entitled to rely on the fact that "peremptory challenges constitute a jury selection practice that permits those to discriminate who are of a mind to discriminate [citations omitted]." *Id.* at 96, 106 S.Ct. at 1723. This combination of factors in the impanelling of a petit jury raises the necessary inference of a purposeful discrimination. *Id.*

The Court further laid out a broad spectrum of nonexclusive considerations judges could consider in determining whether a *prima facie* case has been established including both any known pattern of strikes and the prosecutor's questions and statements during *voir dire*. In order to present a *prima facie* case, the trial defense counsel has the burden of presenting to the court sufficient facts under the totality of the circumstances to raise an inference that the purpose behind any given peremptory challenge was to preclude the prospective juror from sitting solely by reason of his race.

II

I believe an inference is neither supposition nor conjecture but a logical deduction drawn from other facts proven. *Computer Identics Corp. v. Southern Pacific,* 756 F.2d 200 (1st Cir.1985). *See also Mitchell v. Machinery Center, Inc.,* 297 F.2d 883 (10th Cir.1962). Furthermore, in order to create the inference, the evidence must demonstrate more than the fact that the prosecutor has challenged peremptorily a person on the jury venire who is of the same race as the defendant. That fact does not, *per se,* create the inference of invidious racial discrimination as it is neither more nor less justified than an inference that the purpose is constitutionally innocuous. However, that fact coupled with other evidence may well create such an inference.[1] *Swain* created a presumption that the prosecution's peremptory challenges were for the purpose of achieving a fair and impartial jury. As I read *Batson,* that presumption was not vacated but the evidentiary standard to overcome the presumption was lessened in order to provide a given defendant the opportunity to show invidious racial discrimination from the facts in his own case. *See Batson v. Kentucky,* 476 U.S. at 91, 106 S.Ct. at 1719.

*Batson* decreed that once a defendant makes a *prima facie* case, the burden shifts to the prosecution to come forward

---

1. The foregoing view is fortified by Mr. Justice White's concurring opinion in *Batson,* wherein he states, "it is not unconstitutional without

more, to strike one or more blacks from the jury...." *Batson v. Kentucky,* 476 U.S. at 101, 106 S.Ct. at 1725.

with a neutral explanation for peremptorily challenging black jurors. The prosecutor may not merely deny that his peremptory challenge was racially motivated nor indicate his belief that the challenged juror would be partial because of a shared race with the accused. He must articulate good and sufficient reasons based upon the circumstances in the case. The trial judge then has the duty to determine the character of the response and whether that response provides a racially neutral reason. *Batson v. Kentucky*, 476 U.S. at 98, 106 S.Ct. at 1723.[2]

Both *Batson* and *Swain*, although based upon the application of the Equal Protection Clause, nevertheless dealt with state jury systems. The constitutional guarantee of the right to trial by jury does not apply to members of the armed forces. *United States v. McClain*, 22 M.J. 124, 128 (C.M.A.1986) (citing *Ex parte Milligan*, 71 U.S. (4 Wall.) 2, 18 L.Ed. 281 (1866)). Consequently, I view the procedural aspects of *Batson* and *Swain* as not binding on trial by courts-martial. However, notwithstanding the foregoing premise, I can see no valid reason for *not* applying those procedural requirements to military trials. Accordingly, I believe that this court should require the implementation of the procedural requirements of *Batson* in Army courts-martial.

Our system is blessed with competent judges who are as capable as any Federal judge in this land in sorting out the issues that this decision may create. Furthermore, I foresee the the principles of *Batson* being enlarged in the years to come to cover more than race. Consequently, basic procedural concepts for handling *Batson* type issues should and can be implemented in trials by courts-martial as easily as in the Federal jury system.

### III

The *"per se"* rule advanced by the majority superficially relaxes to the benefit of the accused the standards otherwise required to make out a *prima facie* case. In making a traditional equal protection claim, the burden always lies with the moving party to establish a *prima facie* case. *Batson v. Kentucky*, 476 U.S. at 93, 106 S.Ct. at 1721. The *per se* rule eliminates this burden as well as the presumption of propriety which would otherwise attend the exercise of the peremptory challenge. *Cf. United States v. Cruz*, 20 M.J. 873, 886 (A.C.M.R.1985), *rev'd in part*, 25 M.J. 326 (C.M.A.1987) ("Mere possibilities cannot overcome the general presumption of regularity; to hold that they can would be to hold that the presumption itself does not exist ..."). Thus, while eliminating any burden of proof, the *per se* rule practically creates a presumption that invidious racial discrimination is present when a prosecutor exercises a peremptory challenge against a member of the same minority race as the accused.

The *per se* rule also poses other distinct disadvantages and harmful effects. First, it departs from the traditionally adversarial nature of American trial procedure. Second, the rule removes the responsibility from counsel to produce evidence to identify the factors and circumstances dispositive of the accused's claims. Third, it places an unreasonable burden on the military judge to ascertain these same factors and circumstances based upon the totality of the events giving rise to the claims. Fourth, the effect of the rule creates for certain classes a special privilege whereby the accused obtains adjudication of a claim without advancing a basis for relief. *Cf.* M.C.M., 1984, Mil.R.Evid. 103(a)(1) (a party may not complain of a ruling unless he states specific grounds for his objection). Finally, the result is "wholly at odds with the peremptory challenge system as we know it". *Swain v. Alabama*, 380 U.S. 202, 222, 85 S.Ct. 824, 837, 13 L.Ed.2d 759 (1965). The prosecutor's peremptory challenge will now be scrutinized not necessarily because he is applying his challenges in violation of equal protection, but because

**2.** The Supreme Court suggests that the judge's finding of intentional discrimination (or lack thereof) is a finding of fact entitled to appropriate deference by a reviewing court. *Batson v. Kentucky*, 476 U.S. at 98, 106 S.Ct. at 1723.

the challenged member happens to be a member of a cognizable minority. Thus, the purpose of the peremptory challenge, to remove the fear of arousing a juror's hostility through an unsuccessful attempt to develop a challenge for cause, will be lost whenever the peremptory challenge is exercised against a member of a cognizable minority. *See Swain v. Alabama*, 380 U.S. at 219–20, 85 S.Ct. at 835–36. On balance, the disadvantages derived from the *"per se"* rule far outweigh any questionable benefits which might be ultimately derived therefrom.

## IV

Turning to the facts in the case, the appellant is a black soldier. The convening authority had appointed and impaneled seven officers to consider appellant's court-martial. Two of these members were black. Trial counsel's *voir dire* of the membership of the court appears to be entirely innocuous. The record establishes that the trial counsel made no deliberate efforts to establish a challenge for cause against either of the two black members of the panel. He did, however, exercise his one peremptory challenge against Major Harris, a black member.[3] Trial defense counsel requested that the military judge inquire of the trial counsel whether his challenge was for any impermissibly discriminatory purpose. He further stated, "We are not offering that the government has made an improper challenge on discriminatory constitutionally impermissible

grounds, we are merely stating that is the appearance...." The military judge ruled that *Batson* did not require the government to disclose its reasons for a peremptory challenge in a court-martial. He further ruled that, even if *Batson* did apply to military trials, its requirements were not satisfied under the facts of this case. He did not require the trial counsel to provide the reasons for his peremptory challenge of Major Harris.

Under these facts, we believe this case does not suggest a racially motivated peremptory challenge much less meet the burden of proof required by *Batson*. Here, there was no attempt to establish challenges, either peremptorily or for cause, against black members which, if successful, would have resulted in a monochromatic panel. Therefore, the record suggests and infers that the peremptory challenge was exercised against Major Harris on grounds other than race.[4] The motion was further clarified by the representation of trial defense counsel that he was not challenging the propriety of the challenge. For these reasons I agree with the trial judge that the appellant did not present a *prima facie* case of invidious racial discrimination.[5]

In view of the fact that the majority of this court takes a different approach and application from the view I have outlined above, I respectfully dissent from its opinion.

---

**3.** I have no doubt that, in a proper case, a *prima facie* case of invidious racial discrimination can be made out based upon a single peremptory challenge of an individual who is of the same race as the accused.

**4.** The majority of this court ordered an affidavit from the trial counsel over the dissent of this author and others [For our part, we saw no reason for such an order] concerning his reasons for exercising his peremptory challenge against Major Harris. His response did not indicate a racially motivated basis for that challenge.

**5.** Once the judge decides that an accused has rebutted the presumption and made out a *prima facie* case of impermissible discrimination, he should require the trial counsel to come for-

ward with an explanation for the challenge. *Batson v. Kentucky*, 476 U.S. at 97, 106 S.Ct. at 1723. Because a *prima facie* case has been made, mere disclaimers of discriminatory intent or simple avowals of proper purpose will not satisfy the burden imposed by the *prima facie* case. *Id.* The military judge must consider the explanation in light of the totality of the circumstances. If the military judge cannot conclude that the challenge was motivated by non-racial reasons, he will deny the peremptory challenge. If the military judge concludes that the trial counsel has met the burden of demonstrating a racially neutral motive for the challenge, he will sustain the peremptory challenge and make an appropriate finding on the record. On appeal, his ruling will be tested for abuse of discretion. Finding an abuse of discretion, I would reverse and return the case for a rehearing.

ADAMKEWICZ, Senior Judge, concurring in part and dissenting in part:

## I

I applaud the bold step taken by the majority of this court in creating a *per se* rule. This approach will best implement the non-discriminatory policies underlying the holding in *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), and will enhance military and civilian confidence in the fairness of our military justice system.[1] The rule announced today in the exercise of our supervisory powers over the administration of military justice in U.S. Army courts-martial gives "bright-line" guidance to trial courts and the military bar and will provide uniformity and even-handed application of the *Batson* principles at the trial level. Our holding establishes unprecedented safeguards to minority accused and will significantly reduce the probability that peremptory challenges can be influenced by impermissible considerations of race. Except for eliminating peremptory challenge entirely, *Id.* at 107, 106 S.Ct. at 1728 (Marshall, J., concurring), the action we take is the most practical and effective means at our disposal for the elimination of racial prejudice in the selection of court-members. However, I must respectfully dissent against this court's denial to Specialist Moore of the full benefits of *Batson* and of the holding announced today.

I also write to express my reservations about the analysis used by the court. The majority states that, at a court-martial, the peremptory challenge is not used as a jury selection device because each side is limited to one peremptory challenge. No authority is cited for such a bald proposition. To the contrary, *Batson* teaches us that the "reality of practice" is otherwise. A sole excusal may improperly affect the integrity of the selection of the jury and purposeful discrimination may be shown solely from the facts in the case under review. Further, if, as the majority states, in courts-martial counsel use their single peremptory challenge "to remove a member that counsel suspects, intuitively or otherwise, will be sympathetic to the opponent's case," then such action by a trial counsel, to excuse a black member because that member may be sympathetic to a black accused, evinces a racially discriminatory purpose violative of *Batson. See United States v. Crawford,* 35 C.M.R. 3, 13 (C.M.A.1964).

Unlike the majority, I do find instances where minority soldiers have raised the issue of improper exclusion of fellow minorities from court-martial panels. Most recently, in *United States v. Hodge,* 26 M.J. 596 (A.C.M.R.1988), the appellant, a black soldier, complained of selection procedures that excluded black members on his court-martial panel. The issue we address has also been raised in prior cases before this court. *United States v. Caver,* CM 448132 (A.C.M.R. 20 Feb. 1987) (unpub.), *petition denied,* 25 M.J. 385 (C.M.A.1987); *United States v. Santiago–Davila,* CM 447830 (A.C.M.R. 6 Aug. 1986) (unpub.), *petition granted,* 24 M.J. 55 (C.M.A.1987). *See generally* Felder, *A Long Way Since Houston: The Treatment of Blacks in the Military Justice System,* The Army Lawyer, Oct. 1987, at 8.

Inexplicably, although the majority holds that "the specific procedural formulation adopted in *Batson* ... does not apply to courts-martial," the opinion never identifies what those procedures are that are so objectionable for military use. I cannot believe that this court is saying that military trial practitioners are incapable of understanding and applying the procedural intricacies of recognizing when an accused has established a *prima facie* case of racial discrimination based on the trial counsel's use of a peremptory challenge to strike a member of accused's race from the panel. Nor can I accept the proposition that our trial practitioners are unable to comprehend that, once a *prima facie* showing is made, the burden shifts to the trial counsel to come forward with a neutral explanation

---

1. Strict application of *Batson* requirements would cause an unnecessarily unrealistic evidentiary burden on a military accused.

for such challenge. Clearly, such "civilian" procedure is not incompatible with "military" practice. Our military courts have been applying similar procedures from at least the time of the enactment of the Uniform Code of Military Justice and are just an qualified as our civilian brothers "in dealing with the nice subtleties of constitutional law." *O'Callahan v. Parker*, 395 U.S. 258, 265, 89 S.Ct. 1683, 1687, 23 L.Ed. 2d 291 (1969), *overruled in Solorio v. United States*, — U.S. ——, 107 S.Ct. 2924, 97 L.Ed.2d 364 (1987). Recent examples would be the different standards to be employed and shifting burdens in raising and meeting the issue of selective prosecution, *United States v. Hagen*, 25 M.J. 78, 84 (C.M.A.1987) (once a *prima facie* case made out, burden shifts to the prosecution to disprove misconduct) and command influence, *United States v. Thomas*, 22 M.J. 388, 396 (C.M.A.1986) (burden shifting to prosecution to demonstrate no prejudice), *cert. denied*, 479 U.S. 1085, 107 S.Ct. 1289, 94 L.Ed.2d 146 (1987). There is nothing in our court-martial practice that would preclude allegations of racially discriminatory prosecutorial actions from being adjudicated under equal protection standards.[2]

Senior Judge Coker, in Part IV, treats the application of *Batson* procedures to courts-martial as a sixth amendment issue concerning the right to trial by jury. He reasons, citing *Ex parte Milligan*, 71 U.S. (4 Wall.) 2, 123, 18 L.Ed. 281 (1866), that, "if a servicemember has no right to trial by jury under the sixth amendment, then procedural rules designed to protect that right cannot apply to trials by court-martial, even if the procedural rule flows from the fifth amendment." While selection of a jury from a fair cross-section of the community applies, under the sixth amendment, only to the selection of the venire and not the petit jury, *Lockhart v. McCree*,

476 U.S. 162, 106 S.Ct. 1758, 90 L.Ed.2d 137 (1986), Senior Judge Coker's reliance on *Ex parte Milligan* and sixth amendment analysis is misplaced. In *Batson*, the Supreme Court reaffirmed the principle previously announced in *Swain v. Alabama*, 380 U.S. 202, 203–204, 85 S.Ct. 824, 826–827, 13 L.Ed.2d 759 (1965), and in other cases as well, that the purposeful or deliberate exclusion of blacks as jurors because of race violates the Equal Protection Clause. The Court specifically declined to apply sixth amendment analysis to resolve the matter.[3] Further, "[a]lthough an accused tried by a court-martial has no Sixth–Amendment right that its membership reflect a representative cross-section of the military population, he does possess a due-process right to a fair and impartial factfinder." *United States v. Carter*, 25 M.J. 471, 473 (C.M.A. 1988) (citation omitted). Military law recognizes that the abuse or misuse of the peremptory challenge is of constitutional concern. *Id.* at 478 (Cox, J. concurring).

I also fail to see how an issue of retroactivity lies in this case. *Batson* was decided in April 1986 and Specialist Moore was tried in November and December 1986. Defense counsel argued for the application of *Batson* below. *Batson* was the law of the land when the case was tried. Even if retroactivity were a viable issue, *Griffith v. Kentucky*, 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987), teaches us that *Batson* and its principles apply to this case on appeal. Further, the fact that the court searches the record for a "blatant attempt to achieve a monochromatic panel" by the prosecutor demonstrates a lack of understanding of the true meaning and underpinnings of *Batson.* The court fails to recognize that racial discrimination is insidious precisely because it so often does not reveal itself overtly.

---

**2.** I do not join my dissenting brothers' objection to the institution of a *per se* rule as a legislative encroachment. In *Batson,* the Supreme Court specifically declined "to formulate particular procedures to be followed upon a defendant's timely objection to a prosecutor's challenges." *Id.,* 476 U.S. at 99, 106 S.Ct. at 1724. Whatever the label, the "particular procedures" fashioned

by the majority are constitutionally sound and manifestly workable in a military context.

**3.** "[R]esolution of petitioner's claim properly turns on application of equal protection principles and [we] express no view on the merits of any of petitioner's Sixth Amendment arguments." *Batson,* 476 U.S. at 84–85 n. 4, 106 S.Ct. at 1715–1716 n. 4.

It is ironic that, after professing to extend to Specialist Moore the benefits of the *Batson* principles, the court proceeds to deny him the "sensitive inquiry" mandated by the Supreme Court in *Batson. Id.,* 476 U.S. at 93, 106 S.Ct. at 1721. Once the appellant is given the benefit of the *per se* rule, we must conclude that improper racial factors triggered the trial counsel's use of his peremptory challenge. As Senior Judge DeFord cogently points out in his dissent, the practical effect of a *per se* rule is to create a "presumption that invidious racial discrimination is present when a prosecutor exercises a peremptory challenge against a member of the same minority race as the accused."[4] Therefore, the burden has shifted to the government to establish legitimate racially neutral grounds for the challenge.

To meet that burden, over the dissent of four of our members, this court ordered that the trial counsel in this case provide an affidavit explaining the basis for his peremptory challenge of MAJ J.H. I believe that such action is constitutionally insufficient, procedurally unsound, and unnecessarily muddles the appellate process. An *ex parte* affidavit from an affected litigant is an inadequate substitute for the "sensitive inquiry" required by *Batson.* Review of the furnished affidavit confirms my belief.

In his rebuttal, the trial counsel asserts that he exercised his challenge against Major J.H. because he had previous dealings with him on military justice matters. In addition, he states that "MAJ J.H. responded with quizzical looks to several of the standards questions posed by the military judge during voir dire." MAJ J.H. was challenged "since the case ... involved numerous charges and several complicated issues, [and] the government desired a panel that was least likely to be confused by the complexities of the trial."

Applying standard appellate review procedures to this explanation, it is obvious that the trial counsel initially attempts to challenge the accuracy of the record of trial for the record of trial does not support his assertions. As the majority has reported, the trial transcript reflects that "Captain C.S. was the only member who had contact with trial counsel outside the courtroom." It is hornbook law that a properly authenticated record of trial imports absolute verity on appeal and may not be challenged except on the ground of fraud. *See, e.g., United States v. Albright,* 26 C.M.R. 408 (C.M.A.1958). The presumption of regularity which attends a properly authenticated record of trial precludes informal alteration procedures by the use of *ex parte* affidavits. *Id.* The affidavit here is not admissible as jurisdictional in nature, *see, e.g., United States v. Crawford,* 35 C.M.R. at 23–24 (Ferguson, J., dissenting), and is also not presentable under the relaxed procedures authorized in *United States v. Roberts,* 22 C.M.R. 112, 115 (C.M.A.1956), as a supplementary designation of record since the matters asserted in the affidavit do not involve "some procedure or occurrence which ordinarily would be included in the record of trial and other proceedings ..." related to the record.

The second reason given is also inadequate to carry the government's burden. The record reflects that other members were equally "confused" during the voir dire process and that the military judge himself expressed confusion during trial counsel's examination of the members. Since these other "confused" but non-black members were permitted to serve, it appears that the stated reason is pretextual. Further, there was nothing "complicated" to the government's case. To predicate the challenge on "quizzical looks" and a befuddled mind incapable of understanding the proceedings serves to perpetuate the very racial stereotyping that *Batson* seeks to eliminate and all of the members of this

---

**4.** *Another significant effect of the per se* rule will be that a military judge may not only require a trial counsel to justify a peremptory strike but, in the exercise of sound discretion, also may subject the prosecutor's motives and intent to be examined at the *Batson* hearing. This may necessitate the trial counsel being called to the stand. *See United States v. Hagen,* 25 M.J. at 85.

court have rightfully and forcefully disavowed.

A convening authority selects those members of his command "best qualified for the duty by reason of age, education, training, experience, length of service, and judicial temperament." Uniform Code of Military Justice art. 25(d)(2), 10 U.S.C. § 825(d)(2) [hereinafter UCMJ]. Often referred to as a "blue ribbon" jury, "[m]ilitary accused are tried not by a jury of their peers, but by a panel of their best qualified superiors." *United States v. Hodge*, 26 M.J. at 601. Trial counsel's attempt to annul the convening authority's action in selecting MAJ J.H., a military intelligence officer, with twelve and one-half years of active duty, serving as the communication and electronics staff officer for a military intelligence brigade, comes too late and falls short of the explanation required to carry the government's burden.[5] As Senior Judge DeFord, dissenting, makes clear, "mere disclaimers of discriminatory intent or simple avowals of proper purpose will not satisfy [this] burden." The affidavit is insubstantial and unsupported by the record. Accordingly, the affidavit has little, if any, probative value, and should not be outcome determinative.

## II

In my view, the constitutional principles recognized by the United States Supreme Court in *Batson* apply to courts-martial. The right of a soldier-accused to equal protection is violated when a member of his race is excluded from the trial panel solely because of race.[6] The trial counsel's use of a peremptory challenge in such a manner can constitute a prohibited selection device. There is no requirement that the findings and sentence in the case be affected by the alleged discrimination, just as there is no requirement that a certain level of challenge use be achieved. *Batson* does not require that all members of the cognizable group be excluded. *Griffith v. Kentucky*, 107 S.Ct. 708. The military prosecutor who uses his peremptory challenge[7] to remove purposefully a panel member of accused's race has used "all" of the government's allowed peremptory challenges and so is subject to the basic principles of *Batson*. To me *Batson* means that the government is prohibited from striking *any* court member because of his or her race.[8] Therefore, a *Batson* violation may occur even if a member of the constitutionally cognizable group remains on the court.

After timely objection by defense counsel below, the military judge ruled that *Batson* did not apply to trials by court-martial.[9] This ruling was error. Further, even when he assumed that *Batson* did apply, he gave trial counsel the option of responding to the defense's *Batson* inquiry, rather than requiring a response. He then compound-

---

5. *Batson* assumes that the prosecutor's rebuttal will be reasonably contemporaneous to the challenged strike. *McCleskey v. Kemp*, 481 U.S. 279, 107 S.Ct. 1756, 1768 n. 17, 95 L.Ed.2d 262 (1987).

6. Equal protection guarantees are infringed when "constitutionally suspect classifications like race, religion, or national origin are utilized...." *United States v. Means*, 10 M.J. 162, 165 (C.M.A.1981). Cf. *Frontiero v. Richardson*, 411 U.S. 677, 93 S.Ct. 1764, 36 L.Ed.2d 583 (1973) (classifications based on race, alienage, national origin, and sex are inherently suspect); *Schneider v. Rusk*, 377 U.S. 163, 168, 84 S.Ct. 1187, 1190, 12 L.Ed.2d 218 (1964) ("while the Fifth Amendment contains no equal protection clause, it does forbid discrimination that is 'so unjustifiable as to be violative of due process'"). In short, due process, whether civilian or military, includes equal protection. *See United States v. Rodriguez-Amy*, 19 M.J. 177, 182 n. 7

(1985) (Everett, C.J., dissenting). *See generally* Gilligan, *The Bill of Rights and Service Members*, The Army Lawyer, Dec. 1987, at 3.

7. UCMJ art. 41(b) ("[e]ach accused and the trial counsel is entitled to one peremptory challenge...."); Manual for Courts-Martial, United States, 1984, Rule for Courts-Martial 912(g) [hereinafter R.C.M.].

8. *See United States v. Gordon*, 817 F.2d 1538 (11th Cir.1987). I would also hold that "the defense must likewise be so prohibited." *United States v. Leslie*, 783 F.2d 541, 565 (5th Cir.1986) (en banc), *vacated and remanded*, 479 U.S. 1074, 107 S.Ct. 1267, 94 L.Ed.2d 128 (1987), *on remand*, 813 F.2d 658 (5th Cir.1987).

9. Notwithstanding the pusillanimous exception taken by the defense counsel, the parties at trial proceeded as if the issue were presented for resolution.

ed the error by failing to make the findings required by *Batson*.[10]

The proper action for the judge to have taken would have been to conduct "a sensitive inquiry into such circumstantial and direct evidence of intent as may be available," *Batson*, 476 U.S. at 93, 106 S.Ct. at 1721 (quoting *Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 266, 97 S.Ct. 555, 564, 50 L.Ed.2d 450 (1977)), so as to provide the defense with an opportunity to establish a *prima facie* case of prosecutorial misuse of the peremptory challenge under the constitutional standards announced in *Batson*.[11] The military judge should then examine all the circumstances before him to determine whether a reasonable inference arises that the prosecution used the peremptory challenge for racially discriminatory reasons.[12] Once a *prima facie* case of purposeful discrimination is made,[13] the burden is then on the government to articulate a nondiscriminatory reason for the challenge within the context of the case.[14]

In those cases where a "neutral explanation" is presented, the military judge should permit the defense to challenge the prosecution's explanation as pretextual. Close judicial scrutiny should be given to any rebuttal evidence from the government.[15] A mere affirmation of good faith

is insufficient. The presumption of propriety in a prosecutor's use of his peremptory challenge does not survive when a *prima facie* case of purposeful discrimination is established. The principles enunciated in *Batson* would signify nothing if unlawful discrimination could be judicially masked by the mere recitation of an impartial motive.

### III

As the Supreme Court appositely noted: [i]n this case, petitioner made a timely objection to the prosecutor's removal of all black persons on the venire. Because the trial court flatly rejected the objection without requiring the prosecutor to give an explanation for his action, we remand this case for further proceedings. If the trial court decides that the facts establish, prima facie, purposeful discrimination and the prosecutor does not come forward with a neutral explanation for his action, our precedents require that petitioner's conviction be reversed.

*Batson*, 476 U.S. at 100, 106 S.Ct. at 1725.

I joined in the original *Moore* opinion that would return this matter for the sensitive inquiry required in *Batson* to determine the issue of purposeful discrimination

---

**10.** *See also* R.C.M. 905(d) (when factual issues are involved in determining a motion, the military judge shall state the essential findings on the record).

**11.** This showing must be more than mere exclusion of a member of a distinct group.

**12.** Under current practice in federal trials, the threshold for establishing a *prima facie* case is very low. For example, in *United States v. Thompson*, 827 F.2d 1254 (9th Cir.1987), where the Assistant United States Attorney used some but not all of her challenges against the blacks in the venire, the government, on appeal, conceded a *prima facie* case under *Batson*.

**13.** Both Senior Judge Coker and Senior Judge DeFord find no *prima facie* case. Senior Judge DeFord states that "this case does not suggest a racially motivated peremptory challenge much less meet the burden of proof required by *Batson*." Senior Judge Coker notes that the "trial counsel did not attempt to develop a challenge for cause against either black member of the panel." Because governmental racial distinc-

tions are inherently suspect, I believe that my brothers do not give sufficient recognition to the requirement that we employ the most exacting judicial examination in this case. *Cf. Wygant v. Jackson Board of Education*, 476 U.S. 267, 106 S.Ct. 1842, 90 L.Ed.2d 260 (1986) (circuit court reversed for relaxing strict scrutiny standard). I fear that the test they employ is a lower standard than "strict scrutiny."

**14.** The reason given need not rise to the level justifying a challenge for cause.

**15.** In a *Batson* challenge, the initial evaluation of the credibility of the parties and of the reasons given is to be at the trial level. *Id.*, 476 U.S. at 98 n. 21, 100, 106 S.Ct. at 1724 n. 21, 1725. Notwithstanding our fact finding powers under Article 66(c), UCMJ, we are in no position to make that judgment on this incomplete and inadequate record. The actions of the majority have denied Specialist Moore the adversarial process so fundamental to our system of justice. *See, e.g., Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984).

and to develop a proper record for appellate review.[16]

However, the government has now been given an opportunity not only at the trial level by the military judge [17] but also at the appellate level by this court to advance a legally sufficient reason for the peremptory strike. Having twice failed, I can think of no valid reason to approve a third attempt. Under strict *Batson* standards or the *per se* rule announced today, I would reverse and authorize a rehearing.

LYMBURNER, Judge, concurring in part and dissenting in part:

I concur with the lead opinion that the fourteenth amendment equal protection principles enunciated in *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed. 2d 69 (1986), apply to courts-martial through the fifth amendment's due process clause, i.e., a prosecutor's purposeful discriminatory use of peremptory challenges to exclude members of an accused's race from a court-martial violates due process, and that, based upon the record in this case, the military judge did not abuse his discretion in determining a *prima facie* use of purposeful discrimination had not been established. I respectfully dissent from the lead opinion that "[a]pplication of the specific *procedural formulation* enunciated in *Batson* to trials by court-martial is neither required nor practicable ..." and that the establishment of a *per se* rule is appropriate to military practice, i.e., "we will require only that the accused state an objection to the prosecutor's peremptory challenge.... [T]his *per se* rule requires no balancing of factors, no evidentiary hearing, and no need for later review of a trial judge's *prima facie* determination."

In *Batson*, the Supreme Court set out procedures and allocated the burden of persuasion to safeguard an accused's fourteenth amendment equal protection right not to have members of his race excluded from the court solely because of race. In a similar manner, the Supreme Court established procedural safeguards for an accused's fifth amendment right against self-incrimination in *Miranda v. Arizona*, 384 U.S. 436, 478–79, 86 S.Ct. 1602, 1629–30, 16 L.Ed.2d 694 (1966). As observed by the Court of Military Appeals,

> A cursory scrutiny of the opinion in *Miranda* makes crystal clear that the formulae there laid down by the Court are constitutional in nature, although the door was left open for the legislative process to innovate "other procedures which are *at least as effective* " [in safeguarding an accused's fifth amendment rights].

*United States v. Tempia*, 37 C.M.R. 249, 255 (C.M.A.1967), (quoting *Miranda*, 384 U.S. at 467, 86 S.Ct. at 1624) (emphasis supplied by *Tempia* court). Until such time that the legislative process—or, within the armed forces, the President or other competent authority—establishes procedures at least as effective in safeguarding an accused's rights in this regard, I would apply basic procedural and burden of persuasion rules as set out in *Batson* and implemented in the federal courts. Article 36, Uniform Code of Military Justice, 10 U.S.C. § 836 [hereinafter UCMJ], contemplates that the President shall prescribe trial procedures, including modes of proof, which shall, so far as he considers practicable, apply the principles of law and rules of evidence generally recognized in the trial of criminal cases in the United States district courts. My initial impression is that this court's *per se* procedures will prove to

16. *See United States v. DuBay*, 37 C.M.R. 411 (C.M.A.1967); *see also United States v. Benoit*, 21 M.J. 579 (A.C.M.R.1985) (R.C.M. 912(b) hearing procedure on selection of members applies to excusal of members). The analysis in *Benoit* should be extended to *Batson* challenges.

17. In this respect, trial counsel's refusal to speak up when invited to do so by the military judge and his heedless disregard of the opportunity provided to "protect the record" is simply be-

yond the pale. "To avoid needless appellate issues and the attendant risk of reversal on appeal, an experienced prosecutor will weigh the factors involved that will, in many cases, counsel a prudent course of action...." *United States v. Guthrie*, 25 M.J. 808, 810 (A.C.M.R. 1988). Trial counsel elected not to pursue the prudent course of action. His immaturity and obstinacy engendered much needless appellate litigation.

be not as effective as the *Batson* procedures in safeguarding an accused's *Batson* rights. Illustrative of my concern is the court's obtaining of an affidavit from the trial counsel—explaining why he challenged a black member—even when the majority of the court have determined defense counsel did not establish a *prima facie* case. This action sounds more in the nature of a rescue mission than according appellant his "day in court." Furthermore, I share Senior Judge DeFord's opinion on the distinct disadvantages and harmful effects of any *per se* rule, from the perspective of the military judge, government counsel, and an appellate court.

I see no serious inconsistency between the *Batson* procedures and either Article 41(b), UCMJ (each party should have one peremptory challenge) or Rule for Courts–Martial [hereinafter R.C.M.] 912(b) (challenge of selection of members). Surely Congress did not intend that a party could exercise an Article 41 peremptory challenge for an unconstitutional purpose, as Congress did not intend improper criteria to be used in the Article 25 selection of court members. *See United States v. McClain*, 22 M.J. 124 (C.M.A.1986). Also, the procedures in *Batson* are not necessarily inconsistent with R.C.M. 912(b)(2) which requires that a proponent establish a *prima facie* case (an offer of proof of matters which, if true, would constitute improper selection of members) before he shall be entitled to an evidentiary hearing. In the normal case the military judge would hear opposing counsel's response to the offer before determining the need for an evidentiary hearing. As both Senior Judges DeFord and Adamkewicz persuasively make clear, the trial judge and counsel in the court-martial system are very capable in handling this procedure and mode of proof. Because an evidentiary hearing appears more of an option under R.C.M. 912(b)(2) than *Batson*, I have no problem with the lead opinion's observation that "[i]n the normal case we see no reason for, and therefore discourage, an evidentiary proceeding for challenging the reason provided by the government." However, where a military judge believes such an evidentiary proceeding appropriate and necessary, the military judge should be authorized to conduct such a hearing.

In the referenced earlier panel opinion of the court, in which I participated, we held that the *Batson* rule applies to court-martial, that appellant had established a *prima facie* case of discrimination, and that there should be a limited hearing to allow the government to rebut appellant's allegation. That opinion was subsequently vacated and a rehearing en banc ordered. My two colleagues, with whom I had earlier concurred, persist in their opinion that appellant has established in the record a *prima facie* case. My earlier position was influenced primarily by the fact that in oral argument before this court, government counsel conceded that there is no basis in the record to find a non-discriminatory reason for the challenge. There is case authority for the proposition that, where the government so concedes, the defendant "wins the match." Subsequently, during the rehearing en banc, the government did articulate several factors supporting the military judge's determination that the defense counsel had *not* established a *prima facie* case within the meaning of *Batson.* Based upon those facts and circumstances found in the record and set out in the lead opinion, as well as those set forth by Senior Judge DeFord, I share their opinion that the trial judge did not abuse his discretion in this matter. Although I regret the military judge did not have each counsel articulate and argue the relative weight of those factors in the record supporting their respective positions and that he did not set forth in more detail the factual basis for his findings, I find no prejudicial error resulting therefrom within the meaning of Article 59(a), UCMJ.

I would affirm the findings and sentence and establish for trials by court-martial, as an interim measure, the basic procedures and burdens of persuasion set forth in *Batson.*

SMITH, Judge, concurring in part and dissenting in part:

For the reasons stated in the original *Moore* opinion (attached as an appendix) I

concur with the lead opinion insofar as it may be read to state that *Batson* applies to courts-martial.

I dissent from the court's unnecessary and legislative establishment of a *per se* rule removing the defense requirement to articulate a *prima facie* showing of discriminatory purpose. I further dissent from the court's use of an affidavit to make its factual determination of no discriminatory intent. Such an *ex parte* procedure denies appellant due process of law. I find in this case that appellant had, at trial, established a *prima facie* case of discriminatory use of the government's peremptory challenge. I would apply *Batson* in its entirety—not selectively—and return this case to the trial level for litigation of the *Batson* issue.

### APPENDIX

U.S. Army Court of Military Review.

Before ADAMKEWICZ, LYMBURNER, and SMITH Appellate Military Judges.

UNITED STATES, Appellee

v.

Specialist Four HAROLD MOORE, 317–68–6163, United States Army, Appellant.

ACMR 8700123.

For Appellant: Captain Scott A. Hancock, JAGC (argued); Major Russell S. Estey, JAGC, Major Eric T. Franzen, JAGC (on brief).

For Appellee: Captain George R. Gillette, JAGC (argued); Colonel Norman G. Cooper, JAGC, Lieutenant Colonel Gary F. Roberson, JAGC, Major Byron J. Braun, JAGC (on brief).

17 Dec. 1987.

OPINION OF THE COURT*

SMITH, Judge:

On 7 and 26 November, 1–5, 8 and 9 December, 1986, appellant was tried by a general court-martial composed of officer members at Frankfurt, Federal Republic of Germany. Contrary to his pleas, he was convicted of attempted murder, attempted wrongful appropriation of private property, operating a motor vehicle while drunk (two specifications), wrongful appropriation of government property (two specifications), wrongful appropriation of private property, robbery (two specifications), and aggravated assault (seven specifications), in violation of Articles 80, 111, 121, 122, and 128, Uniform Code of Military Justice [hereinafter UCMJ], 10 U.S.C. §§ 880, 911, 921, 922 and 928, respectively. The court sentenced appellant to confinement for twelve years, total forfeitures, and reduction to Private E–1. The convening authority approved the sentence.

Subsequent to voir dire, trial counsel made a peremptory challenge against a member of the court, Major Junior Harris, Jr. Defense counsel requested that the military judge inquire whether the challenge was for any impermissible discriminatory purpose, noting that Major Harris, like appellant, was black. Trial defense counsel cited the Supreme Court holding in *Batson v. Kentucky* [476 U.S. 79], 106 S.Ct. 1712 [90 L.Ed.2d 69] (1986), for the proposition that a prosecutor's discriminatory use of peremptory challenges to remove blacks from a jury violates a black defendant's equal protection rights.

Defense counsel stated: "We are not averring that the government has made an improper challenge on discriminatory constitutionally impermissible grounds, we are merely stating that that is the appearance and the defense would ask the bench to inquire of the government its reasoning for this challenge, this peremptory challenge."

The military judge reviewed the *Batson* decision and ruled that it did not impose a requirement on the government to disclose its reasons for a peremptory challenge in a court-martial. The judge ruled that, even if *Batson* did apply to military trials, its requirements were not satisfied under the facts of this case. The military judge did

---

* Vacated and rehearing en banc ordered, *United States v. Moore*, ACMR 8700123 (A.C.M.R. 13 Jan. 1988) (en banc).

not require trial counsel to disclose the reason for his challenge, but gave him the option of doing so. Trial counsel declined, stating: "Your Honor, the principle of peremptory challenge being at the discretion of counsel, counsel will not make any comment as to the basis for his peremptory challenge."

Appellant argues the applicability of *Batson* to military courts-martial, noting that the Supreme Court has ruled that *Batson* applies retroactively to all cases, state and federal, citing *Griffith v. Kentucky* [479 U.S. 314], 107 S.Ct. 708 [93 L.Ed.2d 649] (1987). Appellant contends that it is only logical that courts-martial be included. In support of his argument appellant cites *United States v. Caver*, CM 448132, slip op. at 3 n. 3 (A.C.M.R. 20 Feb. 1987) (unpub.), *petition denied*, 25 M.J. 385 (C.M.A. 1987) ("A court may need to apply the equal protection principles in *Batson* to trials by court-martial.")

The government asserts that *Batson* does not apply to courts-martial, first, because *Batson* concerns safeguards on the right to trial by jury, which is not applicable in the military. Further, the government contends that, since trial counsel has only one peremptory challenge, the use of that challenge cannot be considered a "jury selection device" that permits discrimination nor can it establish systematic exclusion which raises the issue of discriminatory purpose.

## I

In *Swain v. Alabama*, 380 U.S. 202 [85 S.Ct. 824, 13 L.Ed.2d 759] (1965), a prosecutor had used his peremptory challenges to strike the six blacks on the jury venire. The Supreme Court rejected the accused's claim that he was being denied equal protection by the state's exercise of peremptory challenges to exclude members of his race from the jury, on the basis that he failed to meet his burden of proving purposeful discrimination. The Court did recognize that the use of peremptory challenges could be the basis for a claim of purposeful discrimination if the defendant could show that the system was being per-

verted. *Id.* at 224 [85 S.Ct. at 838]. The Supreme Court indicated that a *prima facie* case could be made by a showing that the prosecutor, in case after case, removed qualified blacks from the jury. *Id.* at 223 [85 S.Ct. at 837]. Since the defendant in *Swain* offered no proof of the circumstances of the prosecutor's use of peremptory challenges in cases other than his own, he did not meet the necessary evidentiary burden for establishing a *prima facie* case. Subsequently, lower courts in interpreting *Swain* reasoned that proof of repeated striking over a number of cases was necessary to establish an equal protection violation. *See Batson v. Kentucky*, 106 S.Ct. at 1720 n. 16. The Supreme Court in *Batson* rejected this interpretation of *Swain*, since it placed a "crippling burden of proof" on defendants and left peremptory challenges immune from constitutional scrutiny. *Batson*, 106 S.Ct. at 1720–21. The Court, in *Batson*, reviewed its decisions since *Swain* and indicated that it had recognized that an accused could make a *prima facie* case of purposeful discrimination in the selection of the venire based on the facts in his case alone. *Batson*, 106 S.Ct. at 1722. The Court applied this analysis to the exercise of peremptory challenges as well. *Id.* at 1722–23.

The Supreme Court in *Batson* was faced with a case in which a black defendant was tried by an all-white jury after the prosecutor had used his peremptory challenges to strike all four black persons on the venire. The Court held that, to establish a *prima facie* case of purposeful discrimination based on the use of peremptory challenges in the accused's trial, the accused (1) must show that he is a member of a cognizable racial group and that the prosecutor has used his peremptory challenges to remove from the jury venire members of his race; (2) can rely on the fact that peremptory challenges constitute a jury selection device that permits discrimination by those so inclined; and (3) must show that these facts and any other relevant circumstances raise an inference that the prosecutor used peremptory challenges to exclude venire members on account of their race. *Id.* at 1723. The Court gave two examples of

how a trial judge could decide whether, under all relevant circumstances, the defendant had made the necessary *prima facie* showing: a pattern of strikes against blacks in the venire may give rise to an inference of discriminatory purpose, and a prosecutor's questions and statements during voir dire and in exercising his challenges may support or refute such an inference. *Id.* Once the defendant has made a *prima facie* showing, the burden shifts to the prosecution to articulate a neutral explanation related to the particular case for the peremptory challenges against black jurors. *Id.* The trial judge then will have the duty to determine if the defendant has established purposeful discrimination.

## II

The initial question presented here is whether *Batson* applies in the military. Previous unpublished Army court opinions indicate a split. *Compare United States v. Caver, supra (Batson* issue waived), (Smith, J., concurring in the result) (*Batson* applies in the military) *with United States v. Santiago–Davila*, CM 447830 (A.C.M.R. 6 Aug. 1986) (unpub.), *petition granted*, 24 M.J. 55 (C.M.A.1987) (questioning application of *Batson* to the military because system allows only one peremptory challenge). The court now believes that the *Batson* issue is squarely presented in this case, and that the court needs to resolve the applicability of *Batson* to trials by courts-martials.

### A. In Principle

The government's first contention, that, because the right to trial by jury does not apply to courts-martial, neither do the constitutional safeguards designed to protect the jury system, is overbroad. The government's interpretation of *Batson* as a Sixth Amendment case is incorrect. The Court in *Batson* clearly stated that its holding was based *not* on the Sixth and Fourteenth Amendment rights to an impartial jury, drawn from a cross-section of the community, but rather on equal protection principles: "[w]e agree that the resolution of petitioner's claim properly turns on application of equal protection principles and express no view on the merits of any of petitioner's Sixth Amendment arguments." *Id.*, 106 S.Ct. at 1716 n. 4. Thus we are dealing not with a jury trial issue but rather with an equal protection issue. While a military accused does not have the right to trial by jury, he does have the equal protection right to a fairly selected court-martial panel. Clearly there can be no provisions for selection or nonselection of court members on the basis of race at any point in a court-martial; indeed, such a concept is unthinkable. "Discrimination in the selection of court members on the basis of improper criteria threatens the integrity of the military justice system and violates the Uniform Code." *United States v. Daigle*, 1 M.J. 139, 140 (C.M.A.1975). *See also United States v. McClain*, 22 M.J. 124 (C.M.A. 1986).

This court remains unpersuaded by the government's representations and appellate brief that military necessity or the provisions of the UCMJ or the Manual for Courts–Martial, United States, 1984, preclude application of the *Batson* equal protection principles to trials by court-martial. As the United States Court of Military Appeals has stated, "[t]he time is long since past ... when this Court will lend an attentive ear to the argument that members of the armed services are, by reason of their status, *ipso facto* deprived of all protections of the Bill of Rights." *United States v. Tempia*, 37 C.M.R. 249, 253 (C.M.A. 1967). Additionally,

> [u]nder the Fifth and Sixth Amendments to the United States Constitution, persons in the armed forces do not have the right to indictment by grand jury and trial by petit jury for a capital or infamous crime. However, courts-martial are criminal prosecutions and those constitutional protections and rights which the history and text of the Constitution do not plainly deny to military accused are preserved to them in the service. Constitutional due process includes the right to be treated equally with all other accused in the selection of impartial triers of fact.

*United States v. Crawford*, 35 C.M.R. 3, 6 (C.M.A.1964) (citations omitted). "The Fifth Amendment's right to due process

encompasses equal protection of the laws." *United States v. Rodriguez–Amy*, 19 M.J. 177, 182 n. 7 [(1985)] (Everett, C.J., dissenting) (citing *Bolling v. Sharpe*, 347 U.S. 497 [74 S.Ct. 693, 98 L.Ed. 884] (1954)).

Thus, the military accused is entitled, through his right to due process and equal protection, to rely upon the equal protection principles articulated in *Batson*. *See Tempia*, 37 C.M.R. at 254 ("both the Supreme Court and [the Court of Military Appeals] itself are satisfied as to the applicability of constitutional safeguards to military trials, except insofar as they are made inapplicable either expressly or by necessary implication.")

### B. The Procedure

The government contends that the use of only one peremptory strike against a black member is insufficient to establish a *prima facie* case. Both federal and state courts have held otherwise. *See, e.g., United States v. Chalan*, 812 F.2d 1302 (10th Cir. 1987); *State v. Alvarado* [226 Neb. 195], 410 N.W.2d 118 (Neb.1987); *Saadiq v. State*, 387 N.W.2d 315 (Iowa 1986), *appeal dismissed* [479 U.S. 878], 107 S.Ct. 265 [93 L.Ed.2d 242] (1986); *Cf. United States v. Cloyd*, 819 F.2d 836 (8th Cir.1987); *United States v. Love*, 815 F.2d 53 (8th Cir.1987) (sole black juror removed by peremptory strike; in view of deference given to lower court's finding that *prima facie* case rebutted, government explanation sufficient). In *Alvardo* [*Alvarado*], the Nebraska Supreme Court recognized that

[i]n this case, there is no pattern of strikes from which such an inference [of discriminatory purpose] can be raised, as there was only one strike which was relevant to a *Batson* determination. However, a pattern of strikes is not required to show a *Batson* violation. In *Batson*, *supra* at 106 S.Ct. at 1723, the Court indicated that a pattern of strikes was merely an "illustrative" example of circumstances which might permit an inference of purposeful discrimination.

*Id.*, 410 N.W.2d at 122. Accordingly, the court held that "the trial court in this case erred in basing its determination that there was no showing of purposeful discrimina-tion on the fact that there was only one strike at issue," although the court ordered no relief in view of the prosecutor's neutral explanation for the strike. *Id.* [410 N.W.2d] at 122, 123.

*Chalan* is also instructive: in a prosecution of an American Indian, two Indians were challenged for cause (with a third challenged by peremptory although both trial and appellate court treated the challenge as a challenge for cause in view of juror's language difficulties) while the fourth (and last) Indian on the jury was removed by peremptory challenge. The defendant protested but, as to the unexplained challenge to the fourth Indian, the trial judge ruled: "I think just the striking of one juror in a particular case does not rise to the level of ... a prima facie showing...." *Id.*, 812 F.2d at 1312. The Tenth Circuit ruled that, in Chalan's case, that one peremptory against the one juror of his race was sufficient to raise an inference that the juror was excluded on account of race. The court observed:

The striking of a single juror of defendant's race may not always be sufficient to establish a prima facie case. However, using the reasoning as articulated in *Batson* "that a defendant may make a prima facie showing of purposeful racial discrimination in selection of the venire by relying solely on the facts concerning its selection *in his case*," *id.* [106 S.Ct.] at 1722, we hold this was done in the instant case even though we are here concerned with only a single juror. Our conclusion comports with the notion that peremptory challenges constitute a practice particularly susceptible to racial discrimination. *See id.* at 1723.

*Chalan*, 812 F.2d at 1314. The Tenth Circuit decided that, since the peremptory removed the only Indian on the jury, there was a substantial risk that the juror was excluded because of race. Thus, the Army court's observation in *Santiago–Davila* that "[i]t is unlikely that *Batson* would apply to trials by courts-martial, primarily [sic] because our system allows only one peremptory challenge—a situation which simply does not permit the government an opportunity to dramatically change the

composition of a court-martial (jury) through challenge," *id.*, slip op. at 2, is not the standard applied by other courts. *The question is whether a juror is excluded because of race, not whether the jury composition was dramatically changed.* We find that neither the lack of a Sixth Amendment jury trial nor the existence of only one peremptory challenge in the military precludes the application of the principles enunciated in *Batson*. We hold that *Batson* applies to trials by court-martial.

### III

In this case, there were two black members detailed to the panel, only one of whom was removed by peremptory strike. However, that was the limit of the prosecutor's power to remove by peremptory. *Batson* has been applied to cases in which, in spite of the prosecution's use of peremptory strikes, blacks did sit on the jury. The fact that black jurors may have actually sat on the jury does not dispose of the *Batson* issue. *See Keeton v. State,* 724 S.W.2d 58, 65 n. 5 (Tex.Cr.App.1987) ("[w]e find nothing in the language of the *Batson* opinion which limits its application to only those cases where *all* of the prospective jurors of the defendant's race were excluded from the panel. Rather, the opinion seems to indicate that, regardless of the number of minority race veniremen that actually serve, the prosecutor may not use peremptory strikes to eliminate *any* potential juror solely on the basis of that juror's race." (emphasis in original)). *Cf. United States v. Forbes,* 816 F.2d 1006 (5th Cir. 1987); *United States v. Woods,* 812 F.2d 1483 (4th Cir.1987) (not all-white jury; when challenged, prosecutor gave reasons for strikes). Instead, the appellate courts have looked to what the final jury composition was in determining whether there was an inference of discriminatory intent. For example, when blacks remain on the jury and the prosecutor has unused peremptory challenges available, courts have found no inference raised. *See, e.g., United States v. Montgomery,* 819 F.2d 847 (8th Cir. 1987); *United States v. Dennis,* 804 F.2d 1208 (11th Cir.1986), *cert. denied* [—— U.S. ——], 107 S.Ct. 1973, 1974 [95 L.Ed.2d 814]

(1987); *Clay v. State* [290 Ark. 54], 716 S.W.2d 751 (Ark.1986). However, this analysis is based on the inference that, since the government could have used its additional peremptory strikes to pull the remaining blacks from the jury, "the government did not attempt to exclude all blacks, or as many blacks as it could, from the jury." *Montgomery,* 819 F.2d at 851; *Dennis,* 804 F.2d at 1211. Of course such an inference is not available in this case because the government used its only challenge to remove one of the two black members detailed to the court-martial; thus, in fact, the government excluded "as many blacks as it could" from the panel.

Finally, government counsel conceded in argument that there is no basis in the record to find a non-discriminatory reason for the challenge. *See, e.g., State v. Farmer,* 407 N.W.2d 821 (S.D.1987) (juror related by marriage to defendant); *Phillips v. State,* 496 N.E.2d 87 (Ind.1986) (of three black jurors removed by peremptory strike, one was acquainted with potential government witness, second had a brother and sister previously convicted in same county, and third was familiar with police officer). *See also United States v. Cox,* 23 M.J. 808, 811 (N.M.C.M.R.1986) (prosecutor explained challenge on basis that manner of member's responses in voir dire indicated member was "overly cautious individual who would find it hard to convict"). There is nothing in the voir dire in this case to show any reason for the peremptory strike, even granted that the strike need not rise to the level of a challenge for cause. "A prosecutor's failure to engage Black prospective jurors 'in more than desultory voir dire, or indeed to ask them any questions at all,' before striking them peremptorily, is one factor supporting an inference that the challenge is in fact based on group bias." *People v. Turner* [42 Cal.3d 711, 230 Cal.Rptr. 656, 665], 726 P.2d 102, 111 (Cal.1986) (quoting *People v. Wheeler* [22 Cal.3d 258, 148 Cal.Rptr. 890], 583 P.2d 748 (Cal.1978)). In this case, the *only* questions directed to Major Harris by trial counsel were general questions directed to all the members together, to which a general

response, all members concurring, was provided.

The military judge ruled that "there is no requirement for the government to disclose under our current law, and even under *Batson v. Kentucky*, taking it at face value as being applicable to the military, I don't find that there is the *prima facie* case made out...." He articulated no basis for either determination. As a general rule, *Batson* determinations by a trial judge, when properly focused, are accorded great deference. *See, e.g., Love* and *Woods*, both *supra.* However, in the absence of any basis in the record for such rulings and in view of his initial determination that *Batson* did not apply, such deference is not appropriate here. We find that appellant has, in this case, established a *prima facie* case of discriminatory use of the government's peremptory challenge. The court will provide government trial counsel an opportunity to respond.

### IV

Finally, although not presented in this case in its present posture, we believe some guidance to the trial judiciary in similar cases is appropriate. When an accused is black and a black member is peremptorily challenged by trial counsel over defense objection, the military judge and counsel must recognize that peremptory challenges can constitute a jury selection practice that permits "those to discriminate who are of a mind to discriminate." *Batson*, 106 S.Ct. at 1723 (quoting *Avery v. Georgia*, 345 U.S. 559, 562 [73 S.Ct. 891, 892, 97 L.Ed. 1244] (1953)). The defendant bears the burden of persuasion to show that these facts and any other relevant circumstances raise an inference that the trial counsel has used his challenge to exclude a member on account of race. When the circumstances of the case, e.g., trial counsel's questions and statements during voir dire examination and in exercising his challenges or the lack of meaningful voir dire of the challenged member, give rise to an inference of purposeful discrimination, the military judge will require trial counsel to articulate the reason for his challenge. It is not necessary that this reason meets challenge for cause standards; it needs only to be race-neutral. If trial counsel declines to state his reason, gives a reason that is not race-neutral or, indeed, does not satisfy the military judge that his reason is race-neutral, then the military judge may deny the peremptory challenge and the challenged member will remain on the court.

The record of trial is returned to the Judge Advocate General for remand to the same or a different convening authority for a hearing to determine the basis of trial counsel's peremptory challenge of Major Harris.

The convening authority will refer the record to a general court-martial for a limited hearing on the matter discussed above. The military judge, under the provisions of Article 39(a), UCMJ, will hear the respective contentions of the parties on the matter, permit the presentation of witnesses and evidence, if any, in support thereof, and enter findings of fact and conclusions of law. At the conclusion of the proceedings, the record with an authenticated verbatim transcript of the hearing will be returned to the Judge Advocate General for further review by this court.

Senior Judge ADAMKEWICZ and Judge LYMBURNER concur.