UNITED STATES, Appellee,

v.

John L. McINTOSH, Staff Sergeant,
U.S. Army, Appellant.

No. 53,816.
CM 446638.

U.S. Court of Military Appeals.

Oct. 24, 1988.

For Appellant: *Captain William E. Slade* (argued); *Colonel Brooks B. La-Grua, Major Marion E. Winter, Major Stephen R. Dooley* (on brief); *Lieutenant Colonel Arthur L. Hunt.*

For Appellee: *Captain Thomas L. Herrington* (argued); *Colonel James Kucera* and *Lieutenant Colonel Larry D. Williams* (on brief); *Lieutenant Colonel Adrian J. Gravelle* and *Captain Laura G. Poston.*

*Opinion of the Court*

EVERETT, Chief Judge:

On October 19, 1984, Staff Sergeant McIntosh was tried at Fort Benning, Georgia, by a general court-martial composed of officer and enlisted members. He was charged with six specifications of wrongfully receiving money from several trainees at various times between September 15 and November 15, 1983, by misuse of his official position, and of conspiring with another noncommissioned officer between November 1 and 15, 1983, to obtain this illegal compensation, in violation of Articles 134 and 81, Uniform Code of Military Justice, 10 U.S.C. §§ 934 and 881, respectively.

McIntosh pleaded not guilty to all charges but was convicted of three of the graft specifications. The sentence adjudged was a bad-conduct discharge, total forfeitures, and reduction to Private E-1. The convening authority approved the sentence but delayed execution of the forfeitures, and the Court of Military Review affirmed in a short-form opinion. We granted review to consider these issues:

I

WHETHER THE MILITARY JUDGE ERRED BY ALLOWING INTO EVIDENCE COUNSELLING STATEMENTS, PREPARED BY APPELLANT'S COMMANDERS, REFLECTING ALLEGED INDEBTEDNESS.

II

WHETHER THE MILITARY JUDGE ERRED BY FAILING TO INFORM APPELLANT OF HIS APPELLATE RIGHTS AND BY FAILING TO ENSURE THAT HE UNDERSTOOD THOSE RIGHTS.

I

The specific incidents of graft with which McIntosh was charged involved his obtaining orders for several trainees to change their duty station from Fort Benning to Fort Ord, California. According to the Government, the price charged for this service was to be $200.00 per trainee.

Prior to entering pleas, the defense made a motion *in limine* to exclude any mention by trial counsel (TC) of "alleged misconduct in the form of indebtedness that Sergeant McIntosh supposedly had incurred." Relying on Mil.R.Evid. 404(b), Manual for Courts-Martial, United States, 1984, trial counsel explained that he planned to introduce evidence that appellant had an extensive history of indebtedness; and he claimed that the sole purpose of this evidence would be to show McIntosh's "motive" for committing the graft offenses. The prosecutor intended to introduce the evidence through appellant's company commander, who had "spoken to him and counseled him many times on the indebtedness problem." Also, the commander would identify letters of indebtedness that had been written to the accused by creditors.

Defense counsel insisted that the prosecutor's real purpose was to bring to the attention of the court-martial members that McIntosh had not paid his debts promptly and so was not a good noncommissioned officer. Also, he argued that many of the debts trial counsel planned to offer evidence about had been repaid and were too remote in time to be probative.

In ruling on the defense objection, the military judge opined:

There's a difference between owing people money—just about everybody these days owes people money—and dishonorably failing to pay an obligation when it becomes due, or issuing an overdraft or a dishonored check, which is misconduct. Indebtedness might be evidence—severe indebtedness might be evidence that would be probative of motive. These incidences of misconduct are probative of an inability to meet your financial obligations as they become due, and they tend to—to establish a motive to steal or take money that's not rightfully yours.

However, the judge was concerned about remoteness, which would diminish the probative value of the Government's evidence; and so he ruled that he would "exclude evidence of specific instances of failing to pay just debts or issuing dishonored checks if they've occurred prior to six months before the—before the initial period that you [TC] allege in any specification." Also, evidence of indebtedness incurred subsequent to the charged offenses would be excluded.

After this ruling, a brief recess ensued, and then defense counsel moved to exclude the proposed evidence of indebtedness on hearsay grounds. He contended that letters of indebtedness from McIntosh's creditors were inadmissible under any of the hearsay exceptions and that the debts could be properly established only by the creditors. Ultimately, the judge decided

that he would admit several "counseling statements" prepared by appellant's commander, Captain Johnson, but would exclude the letters of indebtedness which had prompted the preparation of those statements. Each "counseling statement" had been handwritten on a DA Form 4856—which bears the title "General Counseling Form."

Defense counsel also objected that any comments made by McIntosh to his commander in connection with the "counseling statements" had been obtained in violation of Article 31, UCMJ, 10 U.S.C. § 831, and should be excluded. In overruling this objection, the military judge explained

> that there is nothing inherently wrong or criminal about being in debt. I mean, if there was, we would all be in big trouble. The wrong is the dishonorable failure to pay a just debt, and nowhere is that alleged in any of these. That's misconduct. Being in debt in and of itself is not misconduct. . . .

Captain Johnson, appellant's company commander, testified subsequently that prosecution exhibit 3 contained various "counseling statements" which he had given McIntosh because of the latter's indebtedness. Johnson also said that from his examination of McIntosh's file, as well as from the letters of indebtedness that he had received about appellant, he had learned that appellant was having extensive debt problems at the time of the alleged graft for which he was being court-martialed.

During another Article 39(a), UCMJ, 10 U.S.C. § 839(a), session, defense counsel moved to exclude any testimony about appellant's indebtedness by Major Sherfey, who had preceded Captain Johnson as company commander; and again the objection was based on the hearsay prohibition. The military judge granted the defense motion as to evidence of some bad checks issued by appellant—which apparently the prosecutor also planned to use in establishing McIntosh's "motive"; but he decided that

Major Sherfey could testify about counseling statements.

After Sherfey had testified, the military judge ruled that prosecution exhibit 3—which contained the counseling statements signed by Captain Johnson—would be admissible, so long as certain prejudicial portions thereof, which referred to a criminal investigation and charges, were redacted. The military judge also admitted into evidence a counseling statement prepared by Sherfey; but he ordered deletion of a letter of reprimand which had been attached to the statement.

## II

Mil.R.Evid. 404(b) provides:

Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

To the extent it proved "motive," evidence of appellant's indebtedness had probative value and fit within Mil.R.Evid. 404(b). However, Mil.R.Evid. 403, which requires exclusion of otherwise admissible evidence when its prejudicial impact substantially outweighs its probative value, must also be taken into account.

In this connection, the task is more complicated here than would be true in a civilian milieu, because military law recognizes a crime—dishonorable failure to pay debts—which has no counterpart in civilian life. *See* para. 71, Part IV, Manual, *supra*. Thus, nonpayment of indebtedness tends to establish guilt of an offense punishable under the Uniform Code of Military Justice, which authorizes punishment extending to confinement for 6 months and a bad-conduct discharge. *See* para. 71e.[1] Even so, we conclude that the military judge did not exceed the scope of Mil.R.

---

1. Under paragraph 127c, Manual for Courts-Martial, United States, 1951, a *dishonorable* dis-

charge and 6 months' confinement were authorized for this crime.

Evid. 404(b) by allowing the Government to establish that McIntosh had several debts for which he was being dunned by creditors and subjected to "counseling" by his commander.

The existence of indebtedness must, however, be established by competent evidence. As Chief Justice Rehnquist recently stated for a unanimous Court, "[I]n the Rule 404(b) context, similar act evidence is relevant only if the jury can reasonably conclude that the act occurred and that the defendant was the actor." *See Huddleston v. United States,* —— U.S. ——, 108 S.Ct. 1496, 1501, 99 L.Ed.2d 771, 782 (1988).

■ With respect to the actual existence of the indebtedness, the counseling statements have little value. They are based on unauthenticated letters of indebtedness, which constituted inadmissible hearsay. On the other hand, the counseling statements—as authenticated by the testimony of Captain Johnson—established that McIntosh had received repeated warnings about debts which his company commander believed he owed. The issue then becomes whether receipt of these warnings—even if they were based on erroneous or inadequate information received by appellant's military superiors—would reasonably tend to show that McIntosh had been placed under such pressure to get money that he would adopt any means, legal or illegal, to do so. Also, it might reasonably be inferred that, if the debts did not exist, McIntosh would have made some comment to that effect; and so his failure to deny the debts tended to confirm their existence.[2]

Although the question is close, we believe that the statements would be admissible to show that McIntosh had been placed by his commander in a position where he needed to raise money in order to forestall probable adverse career consequences. On the other hand, we do not believe that the counseling statements were admissible to show that debts actually existed.

■ The military judge did not advert to this distinction and did not inform the court members about the purpose for which the evidence concerning the counseling statements could permissibly be used. The result was that the members were left at liberty to consider these statements and the supporting testimony of Captain Johnson and Major Sherfey for the impermissible purpose of inferring that, at the time of the alleged graft, McIntosh, in fact, owed pressing debts which he desperately needed money to repay.

As has already been noted, existence of such debts—if properly established by testimony of the creditors or by other competent evidence—would have been admissible under Mil.R.Evid. 404(b) to show McIntosh's motive; but the Government failed to introduce such evidence. Consequently, the judge erred in admitting the evidence about the counseling statements without advising the court members of the limited purpose for which they could be considered. Under these circumstances, it is appropriate to remand the case to the Court of Military Review, so that it may decide whether this error had any effect on the findings.

### III

■ At an Article 39(a) session after the trial had ended, the military judge handed appellant a form which advised him of his post-trial and appellate rights. This form, appended to the record as an appellate exhibit, advised appellant to read it carefully and discuss its contents with his attorney. After allowing McIntosh to read the form, the judge inquired whether he had any questions about his rights. McIntosh indicated that he had no questions and that he understood his rights.

Although R.C.M. 1010, Manual, *supra,* requires that, after sentence is adjudged, the military judge must inform the accused of his post-trial and appellate rights, it does not prescribe the manner in which the in-

---

**2.** Drawing this inference from his silence might pose some issues under Article 31, Uniform Code of Military Justice, 10 U.S.C. § 831, but in light of our disposition of this case, we need not consider those issues at this time.

formation is to be furnished. The only requirements under this rule are that the accused receive the information in some intelligible form at the end of the trial and be provided a reasonable opportunity to ask the judge about his rights on the record. Here, the record shows that the judge adequately complied with these requirements. *United States v. Rogers*, 21 M.J. 435, 437 (CMA 1986); *see United States v. Horner*, 22 M.J. 294 (CMA 1986).

### IV

The decision of the United States Army Court of Military Review is set aside. The record of trial is returned to the Judge Advocate General of the Army for remand to that court for further proceedings on the issue whether the error in connection with the reception of evidence of indebtedness prejudiced appellant as to the findings of guilty. Thereafter, Article 67(b)(3), UCMJ, 10 U.S.C. § 867(b)(3), will apply.

Judge SULLIVAN concurs.

COX, Judge (concurring):

I agree that there is a theoretical distinction between *pressure* on an accused because the wolves are at the door and the *fact* of the underlying debt. As indicated by the majority opinion, both tend logically to establish appellant's motive. I would note, parenthetically, that the dunning letters themselves would seem to have been admissible under the first theory.

In any case, since both theories were valid and supported by the same evidence, I doubt that the suggested instructional clarification would have made a difference. Much less am I persuaded that the absence of such instruction—*sua sponte*—amounted to plain error. *United States v. Fisher*, 21 M.J. 327 (CMA 1986). Nonetheless, owing to the unique qualifications of the Court of Military Review to determine facts, Art. 66(c), Uniform Code of Military Justice, 10 U.S.C. § 866(c), I concur in remanding the record to that court for its determination of whether the error was prejudicial.