**UNITED STATES, Appellee,**

v.

**Specialist Keith R. COOPER,
197–54–2205, United States
Army, Appellant.**

**ACMR 8702810.**

U.S. Army Court of Military Review.

18 May 1989.

For Appellant: Lieutenant Colonel Russell S. Estey, JAGC, Major Kathleen A. VanderBoom, JAGC, Captain Jeffrey J. Fleming, JAGC (on brief).

For Appellee: Colonel Norman G. Cooper, JAGC, Lieutenant Colonel Gary F. Roberson, JAGC, Major Daniel J. Dell'Orto, JAGC, Captain James E. Reed, JAGC (on brief).

Before DeFORD, KENNETT, and SMITH, Appellate Military Judges.

## OPINION OF THE COURT

DeFORD, Senior Judge:

Contrary to his pleas, the appellant was convicted by a general court-martial composed of officer and enlisted members of premeditated murder, larceny, and indecent acts in violation of Articles 118, 121, and 134 of the Uniform Code of Military Justice, 10 U.S.C. §§ 918, 921, and 934 (1982) [hereinafter UCMJ]. He was sentenced to a dishonorable discharge, confinement for life, forfeiture of $500.00 pay per month for 600 months, and reduction to Private E1.

On appeal, the appellant contends that the military judge erroneously granted the trial counsel's peremptory challenge against a member of appellant's race in violation of *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), and *United States v. Santiago–Davila*, 26 M.J. 380 (C.M.A.1988), that the evidence of record is insufficient to sustain appellant's conviction of premeditated murder, and that the staff judge advocate erred in failing to advise the convening authority with regard to appellant's allegations of legal error asserted in appellant's post-trial submissions. We hold that the precepts of *Batson v. Kentucky* and *United States v. Santiago–Davila* were not violated and that no prejudicial error was committed at appellant's trial.

### I

The convening authority appointed ten soldiers to sit as court members on appellant's court-martial. Six of the members were officers and four were senior noncommissioned officers as the appellant had requested that his court include enlisted persons.[1] Two of the members appointed, Captain (CPT) Brenda Brown, a female company commander, and Command Sergeant Major (CSM) Williams were black. The *voir dire* examination of CPT Brown by the prosecution was entirely innocuous and no attempt was made to establish a challenge for cause against CSM Williams. Following *voir dire* examination of the members, the prosecutor exercised his single peremptory challenge against CPT Brown. The trial defense counsel objected to this challenge on the grounds that the granting of this challenge would deny the appellant his constitutional right of equal protection. He pointed out to the court that CPT Brown was the only female officer appointed to the panel and also one of two black members appointed to the court-martial. The military judge advised the trial defense counsel that the prosecutor was not required to state any reasons for the challenge,[2] but, nevertheless, directed the prosecutor to state unequivocally whether his challenge was racially motivated. In response, the prosecutor answered:

> [I] would specifically note that Command Sergeant Major Williams is black so we have not denied the accused of having [sic] a panel of different races and creeds and the prosecution has taken into consideration what it knows about CPT Brown's prior duty experience, current duty position, has had an opportunity to review her [Officer Record Brief] and her forms 2 and 2–1 and, taking all those things into consideration, we exercise our right to peremptorily challenge some-

---

1. See Article 25(c), UCMJ, 10 U.S.C. § 825(c).

2. Discussion, Manual for Courts–Martial, United States, 1984, Rule for Courts–Martial 912(g)(1).

body that __ to bring the court down to a certain number we want or for whatever reason.

The military judge considered the foregoing statement—which was no model of clarity—and then advised the prosecutor that he desired the prosecutor to state unequivocally for the record that he was not challenging CPT Brown because she was black or a female.[3] The prosecutor then stated that the judge was correct. However, the judge, still unsatisfied with the prosecutor's response, then asked whether those two factors entered into the prosecutor's consideration. The prosecutor responded:

The fact she is black, none whatsoever.

. . . . .

[And female?]

. . . . .

Marginal—just considering what outlook she might present to this case, what her experiences might be as they relate to the evidence the government knows will be put forth here, that I reiterate, the fact she is a woman is just marginally __ what we're really relying on is what all know about her current duty position [company commander], past experience in the Army, i.e. [sic], her worldly experience.

The defense counsel, who had not reviewed CPT Brown's records, then requested that the prosecutor be required to articulate with particularity what the prosecutor had observed in her records as well as any problems observed in past-duty experience which may have constituted a basis for his challenge.

The military judge denied the request stating:

[T]he court is satisfied the trial counsel has stated sufficient reason recognized by the law for him to exercise the government's right to a peremptory challenge. I will uphold the challenge. Your objection is noted for the record.

On appeal, the appellant argues that the military judge erred in granting the prosecution's peremptory challenge against CPT Brown on the grounds that, faced with the burden of overcoming a *prima facie* case of purposeful discrimination, the trial counsel's explanation actually challenged the convening authority's selection of CPT Brown based on Article 25, UCMJ. He contends that the prosecutor could not rebut a *prima facie* showing of discrimination by challenging an "established presumption" and, as CPT Brown's personnel records confirm, she was supremely qualified due to her "worldly experience" to sit as a member of appellant's court-martial. Appellant thus concludes that the trial counsel's explanation to the trial judge was insufficient to overcome appellant's *prima facie* case of discrimination.

■ We first note that appellant's case was tried in early December 1987, approximately a year after *Batson v. Kentucky* was decided, but prior to any military appellate court's determination that *Batson v. Kentucky* was applicable to trials by courts-martial. See *United States v. Santiago–Davila*, 26 M.J. 380 (C.M.A.1988), and *United States v. Moore*, 26 M.J. 692 (A.C.M.R.1988) (en banc), *petition granted*, 27 M.J. 414 (C.M.A.1988). Nevertheless, the *Batson* doctrine is fully retroactive and applies to appellant's case on appeal. *Griffith v. Kentucky*, 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987); *United States v. Santiago–Davila, supra.*

Appellant's argument that the criteria for selection mandated by Article 25, UCMJ, together with the presumption of propriety which attends official acts somehow renders the government's explanation legally insufficient is without merit. The fallacy in appellant's argument that a trial counsel cannot rebut a *prima facie* case by challenging the presumption that the convening authority has properly discharged the duties mandated by Article 25, UCMJ, lies with the role these "officials" perform

---

**3.** Although *Batson* is limited to invidious racial discrimination, we note that, although the prosecutor stated that his challenge was marginally based on CPT Brown's gender, his later state-

ments support a strong inference that the challenge was based on her known proclivities as an individual and not on her gender.

in the panel selection process. The convening authority is prohibited from selecting members with the intent to obtain a particular result either as to findings or to sentence. *United States v. McClain*, 22 M.J. 124, 132 (C.M.A.1986). Conversely, the trial counsel is specifically charged with the duty to pursue specific results both as to findings and to sentence. Thus, the trial counsel's statutory right of peremptory challenge under Article 41(b), UCMJ, 10 U.S.C. § 841(b), exists independent of the Article 25, UCMJ, selection process. The former is a prosecutorial act; the latter is a quasi-judicial act.

Judge Coker stated in his majority opinion in *United States v. Moore:* "Race may not be allowed to raise its ugly banner as a criterion for peremptory challenges." *United States v. Moore*, 26 M.J. at 698 (citing *United States v. Crawford*, 35 C.M.R. 3, 21 (C.M.A.1964)). This statement is echoed in Supreme Court precedents.

In *Swain v. Alabama*, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965), a case premised upon the equal protection clause, the Supreme Court of the United States considered a case in which it was alleged that there was invidious racial discrimination in the selection of the general jury venire because black persons were excluded from the petit jury through the use of peremptory challenges. The Court held that the petitioner Swain had failed to establish systematic discrimination in the selection of the general jury venire and in the prosecutor's exercise of peremptory challenges. They ruled that, absent a clear showing of systematic discrimination, the presumption in any particular case must be that the prosecutor is using his challenges to obtain a fair and impartial jury and that any other result would establish a rule wholly at odds with the peremptory challenge system. *Swain v. Alabama*, 380 U.S. at 222, 85 S.Ct. at 837. That Court further stated that, with regard to petitioner's claim that black people had been denied the right to sit on petit juries in civil and criminal cases for many years, the record was not sufficient to demonstrate that black persons had been excluded from juries for reasons wholly unrelated to the outcome of a particular case at trial. *Id.* at 224, 85 S.Ct. at 838.

In *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), the Supreme Court reconsidered the ruling of *Swain v. Alabama* in a case in which the prosecutor removed all four black persons from the jury venire through the application of peremptory challenges. The Court reaffirmed the rule of *Strauder v. West Virginia*, 100 U.S. 303, 25 L.Ed. 664 (1880), that, while a racial minority defendant does not have a right to a petit jury composed in whole or in part of persons of his own race, he is nevertheless denied the equal protection of the laws when the state puts him on trial before a jury from which members of his race have been purposefully excluded. *Batson v. Kentucky*, 476 U.S. at 85, 106 S.Ct. at 1716. *Batson*, like *Swain*, held that the state's privilege to strike individual jurors through peremptory challenges is subject to the commands of the Equal Protection Clause. *Id.* 476 U.S. at 89, 106 S.Ct. at 1718–19. As a consequence, prosecutors are forbidden to challenge potential jurors solely on account of their race or on the assumption that black jurors as a group will be unable to consider the state's case against a black defendant. *Id.* The Court in *Batson* noted that a number of lower courts had found that the decision in *Swain* imposed a crippling burden of proof upon black defendants attempting to show invidious racial discrimination and had resulted in prosecutor's peremptory challenges being largely immune from constitutional scrutiny. *Id.* 476 U.S. at 92 n. 17, 106 S.Ct. at 1720 n. 17.

The Court further noted that, in the years after *Swain* had been decided, the Court had recognized that a defendant may make a *prima facie* showing of purposeful racial discrimination in the selection of the venire by relying solely on the facts concerning its selection in his own case and that a consistent pattern of official racial discrimination in other cases is not a necessary predicate to establish a violation of the equal protection clause. *Id.* 476 U.S. at 95, 106 S.Ct. at 1722. The Court then modified the rule in *Swain* with regard to

the standard of proof required to establish a *prima facie* case of purposeful invidious racial discrimination.

The Court ruled that, to establish such a case, the defendant must first show he is a member of a cognizable racial group and that the prosecutor has exercised peremptory challenges to remove members of the defendant's race from the venire. Second, the defendant must show that these facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude veniremen from the petit jury on account of their race. The Court also held that a defendant is entitled to rely on the fact that "peremptory challenges constitute a jury selection practice that permits those to discriminate who are of a mind to discriminate." *Id.* at 96, 106 S.Ct. at 1723. This combination of factors in the impaneling of a petit jury raised the necessary inference of a purposeful discrimination. *Id.*

The Court further laid out a broad spectrum of nonexclusive considerations judges could consider in determining whether a *prima facie* case has been established including both any known pattern of strikes and the prosecutor's questions and statements during *voir dire.* In order to present a *prima facie* case, the trial defense counsel has the burden of presenting to the court sufficient facts under the totality of the circumstances to raise an inference that the purpose behind any given peremptory challenge was to preclude the prospective juror from sitting solely by reason of his race.

In *United States v. Santiago–Davila, supra,* the United States Court of Military Appeals considered a case of drug charges involving the conviction of a soldier of Puerto Rican ancestry. The prosecutor exercised his only peremptory challenge against the only identified "Puerto Rican" who was a member of that court-martial panel. The court held that Puerto Ricans

were a cognizable racial group and that the prosecutor had removed one of two "Hispanic" members of the court-martial without being required to show a basis other than race for such a challenge. Furthermore, that court noted that the *voir dire* examination and the remainder of the record failed to show any reason other than race for such a strike. Consequently, the court, relying on a decision of the Supreme Court of Iowa, then stated that the appellant had presented a *prima facie* case. *United States v. Santiago–Davila,* 26 M.J. at 392. That court then directed the case be returned to the trial court for limited hearing as to the basis underlying the prosecutor's exercise of his single peremptory challenge.

Finally, this court has judicially created a *per se* rule to the effect that, when a prosecutor exercises a peremptory challenge against a court member who is of the same cognizable race as the accused, the court would only require the accused to state an objection in order to shift the burden to the prosecutor to establish that his peremptory challenge was not racially motivated because of the absence of a pattern of strikes in military courts-martial. *United States v. Moore,* 26 M.J. at 700, *petition granted,* 27 M.J. 414 (C.M.A. 1988).[4]

■ Turning to the facts of this case, we need not concern ourselves with whether the appellant made out a *prima facie* case when he objected to the prosecutor's peremptory strike of CPT Brown nor whether this court's *per se* rule as enunciated in *Moore, supra,* remains viable in light of the decision of the United States Court of Military Appeals in *Santiago–Davila supra.*[5] Here, the trial judge required the prosecutor to provide a reason for his peremptory challenge on the record.

---

4. The United States Court of Military Appeals has granted review on the issue of whether this court properly applied the *Batson* standards to the facts of that case and on the issue of whether this court erred in considering trial counsel's affidavit in resolving the issue.

5. The United States Court of Military Appeals had this court's decision in *United States v. Moore, supra,* in their possession at some point prior to publication of *United States v. Santiago–Davila, supra.*

■ As we have noted, the accused was a black soldier and two of the ten soldiers appointed by the convening authority to sit on appellant's court-martial were black. The *voir dire* examination by the prosecutor was innocuous and the record other than the prosecutor's colloquy with the military judge is silent. No attempt was made to challenge CSM Williams for any reason. Consequently, the prosecution made no attempt to achieve a monochromatic panel, a fact which belies any racially discriminatory purpose. Nevertheless, the military judge required the prosecutor to state unequivocally whether his challenge was racially motivated. However, the prosecutor's mere denial in and of itself cannot be considered dispositive of the issue because a mere denial of discriminatory motive and affirmation of good faith would result in the equal protection clause being considered a "vain and illusory requirement." *Batson,* 476 U.S. at 89, 106 S.Ct. at 1719 (citing *Norris v. Alabama,* 294 U.S. 587, 55 S.Ct. 579, 79 L.Ed. 1074 (1935)).

However, as noted, the prosecutor did not merely answer the military judge's question but further advised the court that he was familiar with CPT Brown's prior duty experience, current duty position, and advised the court he had reviewed her personnel records. The prosecutor had determined to exercise his peremptory challenge against CPT Brown based upon this knowledge. However, the judge remained unsatisfied with these statements and further demanded that the prosecutor state a disavowal on the record that he was not challenging CPT Brown on the basis of race or on the fact she was a woman. The prosecutor then reiterated his denial of any racial basis but admitted that the fact that CPT Brown was a woman was of marginal importance considering its input upon her outlook and perceptions and considering their knowledge of her current duty position (company commander), past experience in the Army, her worldly experience, and how that quantum of experience might impact upon her consideration of the evidence the prosecution knew would be presented to the court-martial. The obvious inference here is that the prosecution was probably concerned about certain actions taken by CPT Brown during her tenure as a company commander.

The military judge was satisfied with the prosecutor's response and sustained the challenge. However, he made no formal finding of fact to that effect. *See United States v. Moore,* 26 M.J. at 701. The absence of a specific formal finding of fact by the trial judge need not detain us. By accepting the prosecutor's statements and permitting his peremptory challenge against CPT Brown, the military judge in effect held that the prosecutor had met his burden of persuasion and he essentially found that the prosecutor's challenge was not based upon a racially motivated reason but upon a racially neutral reason.

■ We find no abuse of discretion by the trial judge although he committed procedural error in failing to enter formal findings of fact on the record. This failure, however, was essentially harmless. Article 59(a), UCMJ, 10 U.S.C. § 859(a).

## II

■ Appellant further alleges the evidence is insufficient to prove premeditated murder because there is a reasonable doubt as to premeditation and intent to kill or seriously injure.

This court has the duty of determining the legal sufficiency as well as its factual sufficiency. The test of the former is whether, considering the evidence in the light most favorable to the prosecution, a reasonable fact finder could have found all essential elements of the offense beyond a reasonable doubt. *United States v. Turner,* 25 M.J. 324 (C.M.A.1987) (citing *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979)). The test for factual sufficiency is whether after weighing all the evidence in the record of trial and making allowances for not having personally observed the witnesses, the members of this court are convinced of the appellant's guilt beyond a reasonable doubt. *Id.*

The Manual for Courts–Martial, United States, 1984 [hereinafter M.C.M.], para-

graph 43b(1), sets forth the four elements of premeditated murder as follows: (1) that a certain named or described person is dead; (2) that the death resulted from the act or omission of the accused; (3) that the killing was unlawful; and (4) that at the time of the killing the accused had a premeditated design to kill.

The evidence at trial is undisputed as to three of the four elements of the offense. The prosecution established beyond a reasonable doubt that the victim, a German national, died at the date, time and place alleged in the specification as a consequence of strangulation at the hands of the appellant. At issue was whether the victim died as a consequence of premeditated design to kill as alleged by the prosecution, or whether he died as a consequence of unpremeditated murder or involuntary manslaughter, both lesser included offenses of the offense of premeditated murder. The appellant and his appellate defense counsel concede that the evidence establishes the offense of involuntary manslaughter in violation of Article 119, UCMJ, 10 U.S.C. § 919, but dispute here, as at trial, that the death of the victim was premeditated murder.

■■ With regard to the offense of premeditated murder, we noted in *United States v. Viola:*

> In order to sustain a conviction of premeditated murder, the government must prove beyond a reasonable doubt that the accused committed murder with a premeditated design to kill. *See* Manual for Courts–Martial, United States, 1984 [hereinafter M.C.M.], para 43b(1). The element of premeditated design includes both a specific intent to kill and consideration of the act intended. M.C.M., para. 43c(2)(a). Intent to kill alone is insufficient to sustain a conviction for premeditated murder. *See* W. LaFave and A. Scott, *Criminal Law*, § 73 (1972). *See also* F. Bailey and H. Rothblatt, *Crimes of Violence: Assault and Homicide*, § 550 (1973), *and* C. Torcia, *Wharton's Criminal Law*, (14th ed.), § 140 (1979). To sustain such a conviction, the killing must have been committed after reflec-

tion by a cool mind. *Id.* Because such reflection or deliberation is a subjective state of mind, the finder of fact must often resort to circumstantial evidence of premeditation. LaFave and Scott's treatise on the subject finds three categories of evidence useful in resolving the question of premeditation. *Id.* These categories include evidence of planning activity, evidence of motive and evidence of the nature of the killing.

*United States v. Viola,* 26 M.J. 822, 829 (A.C.M.R.1988), *affirmed* 27 M.J. 456 (C.M.A.1988) (summary disposition). Furthermore, the premeditated design to kill does not have to exist for any measurable or particular length of time but need only precede the actual killing of the victim. MCM 1984, Part IV, para. 43c(2)(a).

The evidence introduced at trial included a pretrial statement of the accused which, although inconsistent in certain parts, establishes that the appellant met the victim at a gasthouse in a small town in the Federal Republic of Germany. The appellant's unit was quartered in a field near the town. The two men spent the evening and early morning hours of the following day visiting another gasthouse and a disco bar. During the period, both men consumed a substantial amount of beer and other alcoholic beverages. The appellant also had two meals. Finally, at or about 0100–0130 hours, the parties drove to the victim's home for the understood purpose of engaging in a homosexual act.

The appellant took a bath during which time the victim undressed and then laid down on his bed. Upon completion of his bath, the appellant suggested to the victim that he tie him up in order to increase his sexual pleasure as he was masturbated by the appellant. The victim agreed and the appellant tore out the telephone cables in the house, which he used along with clothing to bind the victim's arms and legs. He also placed a ligature around the victim's throat and gagged him. Thereafter the appellant stated he masturbated himself in front of the victim. After the completion of this act, the appellant stated that he decided to kill the victim. Thereafter he

placed a knee on the victim's chest and masturbated the victim while tightening the ligatures around his throat, ostensibly to provide increased sexual enjoyment, a form of "auto eroticism." He first described the victim's death as an "accident" but upon being pressed by the interrogating police officers, admitted that he killed the victim because "I didn't want that anybody finds out that I had intercourse with a man."

Professor Doctor Klaus Pueschel, M.D., an expert witness in forensic pathology and a recognized expert in strangulation deaths, testified that he examined the body and scene as part of a medical autopsy team requested by the German police. His examination of the victim's body and the scene indicated that the victim died of asphyxia. This cause of death resulted from a narrowing of the arteries and blood vessels in the neck of the victim caused by the ligatures which resulted in the blood of the victim reaching his head but being unable to return to the heart through the circulation system. He testified that such a closure only required slight pressure in order to reach that result. He opined that once constant pressure is applied to restrict the blood vessels in the neck it only required three to five minutes before the victim died. He described the abrasion on the victim's chest and described the reactions a person being strangled would have during the process. These include attempts to gasp for air, body cramps, and attempted body movement. These reactions begin as voluntary actions; however, as the victim of the strangulation becomes unconscious, the movements continue as involuntary actions followed by some terminal gasping as the victim's face turns blue and the soft tissues swell as they increase in blood volume. Dr. Pueschel stated that the victim's gasping would clearly be heard even if the victim was gagged. In addition, he testified that a reasonable man looking at the victim's face would see what was happening to the victim.

He further found evidence of live sperm on the victim's body which confirmed a recent ejaculation. The ligatures around the victim's neck had not been removed at the time the body was found. However, the ties around the arms and legs were cut.

The physical evidence at the scene of the victim's death, to include his body, substantially confirms the appellant's pretrial statement as to what occurred between the appellant and the victim. However, the only evidence of premeditated design to kill was the statement of the appellant. Our reading of the pretrial statement convinces us, as undoubtedly the court members were convinced, that from the position the appellant masturbated the victim, he must have observed his body contortions and his face, and as a trained medical corpsman he must have recognized the signs of impending death.

Accordingly, considering the admissible evidence of record in the light most favorable to the prosecution, the members of appellant's court-martial could and did reasonably find all the elements of the offense of premeditated murder beyond a reasonable doubt. There is sufficient evidence of record to sustain their finding beyond a reasonable doubt.

Furthermore, this court has weighed the admissible evidence of record and, although we did not have the opportunity to hear and observe the witnesses, we also are convinced and satisfied that the appellant is guilty of the charged offense of premeditated murder beyond a reasonable doubt.

### III

Appellant further alleges the staff judge advocate erred in failing to advise the convening authority concerning allegations of error alleged by the appellant in his post-trial submission.

■ The record of trial discloses that the trial defense counsel filed a clemency petition with the convening authority in which she requested that the adjudged confinement in excess of 20 years be suspended. In support of this request and in addition to other matters which may be clearly classified as matters of clemency she stated:

The evidence presented at trial indicates that the victim's death occurred during a

**818**

homosexual act which involved restricting the oxygen supply of the victim in order to enhance orgasm. The circumstances surrounding the death are consistent with the finding that SP4 Cooper did not intend to kill the victim, and therefore is guilty of only involuntary manslaughter or negligent homicide. The extent of SP4 Cooper's premeditation, if any, was minimal.

Our view of the foregoing statement is that trial defense counsel's statement merely states that the evidence could be construed to be consistent with a finding of involuntary manslaughter or negligent homicide and that evidence of premeditated design to kill the victim could also be construed to be minimal, not that it does not exist. Consequently, we view the matter as bearing on the weight of the evidence rather than its nonexistence.

Whether this constitutes an allegation of legal error is extremely doubtful. Nevertheless, we believe the appellant suffered no prejudice as a consequence of the staff judge advocate's failure to respond to this allegation as the appellant could not reasonably expect a favorable recommendation to the convening authority or any other "corrective" action which would inure to his benefit. *See United States v. Hill*, 27 M.J. 293, 296–297 (C.M.A.1988).

### IV

Finally, appellant has personally alleged thirteen allegations of error under *United States v. Grostefon*, 12 M.J. 431, 436 (C.M.A.1982). The court has carefully examined and considered each of the allegations and finds that they are without merit.

Accordingly, the findings of guilty and the sentence are affirmed.

Judge KENNETT and Judge SMITH concur.