UNITED STATES, Appellee,

v.

**Staff Sergeant John L. McINTOSH, 258–70–6560, United States Army, Appellant.**

**CM 446638.**

U.S. Army Court of Military Review.

6 Oct. 1989.

For Appellant: Captain Thomas A. Sieg, JAGC, Captain Jeffrey J. Fleming, JAGC (on brief).

For Appellee: Lieutenant Colonel Daniel J. Dell'Orto, JAGC, Captain James K. Reed, JAGC (on brief).

Before MYERS, JOHNSON and NEURAUTER, Appellate Military Judges.

OPINION OF THE COURT

NEURAUTER, Judge:

Contrary to his pleas, the appellant was convicted of three specifications of graft in violation of Article 134, Uniform Code of Military Justice, 10 U.S.C. § 934 (1982) [hereinafter UCMJ]. Appellant was acquitted of three other specifications of graft and of one specification of conspiracy to commit graft (Article 81, UCMJ, 10 U.S.C. § 881). A panel of officers, sitting as a general court-martial, sentenced the appellant to a bad-conduct discharge, forfeiture of all pay and allowances, and reduction to Private E1. The convening authority approved the sentence.

On 4 June 1985 this court affirmed the findings and sentence without opinion. On 24 October 1988 the Court of Military Appeals set aside the decision of this court and remanded the case for further proceedings. *United States v. McIntosh,* 27 M.J. 204 (C.M.A.1988). On 23 December 1988 this court ordered that additional pleadings be filed.

Appellant was charged with six specifications of having wrongfully received money as compensation for services rendered to several soldiers and one specification of having conspired to wrongfully receive money as compensation for services rendered to a soldier. During the relevant time period, appellant was assigned as an operations sergeant, 4th Airborne Training Battalion, School Brigade, United States Army Infantry School, where he was responsible for processing paperwork for trainees transferring out of Airborne School. Five soldiers testified at appellant's trial that they had each paid him $200.00 or $250.00 out of their advance travel pay in return for extra leave time that would not be charged on their leave and earnings statement and extra money for travel, or just additional travel money itself. The appellant testified during the trial and denied these allegations. Over defense objection (during the presentation of the government's case-in-chief), the military judge admitted evidence of delinquent indebtedness of appellant. This was ac-

complished through testimony of appellant's commanding officers and certain counseling statements they had prepared.

In ruling on the admissibility of this evidence under Manual for Courts–Martial, United States, 1984, Military Rule of Evidence 404(b), the Court of Military Appeals stated as follows:

> Although the question is close, we believe that the statements would be admissible to show that McIntosh had been placed by his commander in a position where he needed to raise money in order to forestall probable adverse career consequences. On the other hand, we do not believe that the counseling statements were admissible to show that debts actually existed.

*McIntosh*, 27 M.J. at 207.

The military judge, in making his ruling, stated that he felt the evidence was probative of motive on the part of appellant but he did not instruct the court members on the limited purpose for which it was admitted. The Court of Military Appeals noted that "... [t]he result was that the members were left at liberty to consider these statements and the supporting testimony of [the commanders] for the impermissible purpose of inferring that, at the time of the alleged graft, (appellant), in fact, owed pressing debts which he desperately needed money to repay." *Id.* The Court then ruled that the government failed to introduce competent evidence of the debts and, as a result, the military judge erred in admitting the evidence about the counseling statements without advising the court members of the limited purpose for which it could be considered.

The case was remanded to this court to determine whether this error had any effect on the findings of the trial court. In that regard, we have carefully examined the record to determine if, absent the evidence of the appellant's indebtedness, the remaining evidence is sufficient as a matter of fact and law to support appellant's conviction of graft. *See* Article 66(c), UCMJ, 10 U.S.C. § 866(c); *United States v. Turner*, 25 M.J. 324 (C.M.A.1987); *United States v. Cooper*, 28 M.J. 810 (A.C.M.R. 1989).

Aside from the two commanders who were called to testify concerning debts owed by appellant, the Government called five soldiers during the presentation of its case. At the time the incidents occurred, all had recently completed basic combat training (BCT) and advanced individual training (AIT) at Fort Benning and, having failed the airborne qualification physical training test, had been disenrolled from airborne training. They were then assigned to a "holding company" to await further assignment orders. At that point each witness came in contact with the appellant. The testimony of the five soldiers concerned their individual experiences with appellant, but certain common threads run through their testimony. All stated that appellant would initially approach them with questions about whether they would like extra leave time or extra money during their travel to their next duty station. All were being assigned to Fort Ord, California. Each soldier received advance travel pay based on a claim that he would drive a privately owned vehicle to Fort Ord (although apparently only one actually owned an automobile), and, at the suggestion of the appellant, each soldier paid appellant $200.00 out of this travel advance after cashing the check. (One soldier testified that he paid appellant $250.00).

Four of the five soldiers were together during BCT and AIT at Fort Benning but all claimed they did not discuss their respective transactions with appellant between themselves until several months later, after they had been questioned by the United States Army Criminal Investigation Division (CID) about the allegations. CID had opened the investigation based on a call by one of the witnesses in late January, 1984. Subsequently, another witness wrote appellant's former commander about the situation. As ably brought out by trial defense counsel, there were some inconsistencies in the testimony of some of the witnesses. These involved, however, minor points which did not significantly undermine their testimony.

In contrast, the evidence presented by the government, as finally allowed by the military judge, which pertained to appellant's indebtedness is decidedly weak. The counseling statements admitted by the military judge were redacted to show only that appellant was counselled for debts to two companies. After trial defense counsel concluded cross examination of the two commanders, it was clear that appellant only owed two debts totalling less than $300.00. Trial counsel, in his final argument stated only that appellant "... had a motive: He had some financial problems." In assessing the impact of this evidence, we conclude such was minimal, especially in light of the compelling evidence against appellant.

We are convinced that although the military judge committed error, such error was not prejudicial. We find that the error had, at most, only a slight effect on the resolution of the issues in this case in light of the strength of the government's evidence. *See United States v. Barnes*, 8 M.J. 115 (C.M.A.1979).

The findings of guilty and the sentence are affirmed.

Senior Judge MYERS and Judge JOHNSON concur.