UNITED STATES, Appellee,

v.

Leroy THOMPSON, Jr., Chief Warrant Officer Two U.S. Army, Appellant.

No. 61,976.
CM 8700614.

U.S. Court of Military Appeals.

April 27, 1990.

For Appellant: *Captain W. Renn Gade* (argued); *Colonel Robert B. Kirby* (on brief); *Colonel John T. Edwards, Lieutenant Colonel Russell S. Estey, Captain Brian D. Digiacomo, Captain Jeffrey J. Fleming.*

For Appellee: *Captain Randy V. Cargill* (argued); *Colonel Alfred F. Arquilla, Lieutenant Colonel Daniel J. Dell'Orto, Major Gary L. Hausken* (on brief).

*Opinion of the Court*

COX, Judge:

Appellant was tried by a general court-martial composed of officer members at Fort Irwin, California, for making and uttering checks with intent to defraud, dishonorable failure to maintain sufficient funds, and wrongful possession of two military identification cards, in violation of Articles 123a and 134, Uniform Code of Military Justice, 10 USC §§ 923a and 934, respectively. He was sentenced to confinement for 1 year and a dishonorable discharge. The Court of Military Review affirmed the findings and sentence in a short-form opinion. This Court granted review of the following issue:

WHETHER THE MILITARY JUDGE ERRED IN ADMITTING PROSECUTION EXHIBIT 28, A SWORN ADMISSION BY APPELLANT OF UNRELATED MISCONDUCT.

Appellant was charged, *inter alia*, with six specifications of making and uttering, with intent to defraud, checks totaling $610, all in August 1986. He was found guilty of three of these specifications. He was also charged with three specifications of dishonorable failure to maintain funds for checks totaling $208, also all in August, and he was found guilty of all these specifications.

Before entering pleas, appellant brought a motion *in limine* to suppress a sworn statement he had given in June 1985, over 1 year before committing the offenses for which he was court-martialed. Trial counsel offered the statement under Mil.R.Evid. 404(b), Manual for Courts–Martial, United States, 1984, in order to show "intent, motive, identity and to show a common scheme or plan." Appellant contested admission of the statement on three grounds: that it was involuntary and in violation of Article 31, UCMJ, 10 USC § 831; that it was irrelevant under Mil.R.Evid. 404(b); and that its probative value was substantially outweighed by its unfair prejudicial effect under Mil.R.Evid. 403.

The statement, dated June 14, 1985, contained appellant's admissions to writing bad checks which he attributed to a gambling problem, an extramarital affair which had cost him money to maintain, and problems meeting his mortgage payments. According to appellant, he originally went to the home of his commanding officer, Major Howard, on the evening of June 13th, seeking help and hoping to resolve these problems administratively. The following morning, he had to report to the commander's office and write out a statement. Major Howard then had the statement taken to the staff judge advocate's office, where it was typed and returned. Major Howard told appellant to sign the statement and swear to its truthfulness. Prior to making the statement, appellant was never advised of his Article 31 rights. He insisted at trial that he made the statement with "the understanding that" he would be helped and would not be punished. Appellant's version of the events was unrebutted at trial. The record does not exhibit any necessity for securing a sworn statement from appellant regarding these problems. Consequently, appellant faced punishment under Article 15, UCMJ, 10 USC § 815, and he received a letter of reprimand.[1]

At trial, the military judge ruled the statement was admissible, finding it was evidence of "a common plan and a scheme" and it presented the "[c]ommon sense" inference that appellant still had a gambling problem, which caused him to write bad checks. The Government offered the exhibit in its case-in-chief. No evidence was presented, however, to show that appellant had had any recent problems with gambling or that he was having any extramarital affairs which were still causing him to write bad checks.[2] No limiting instruction was requested or given.

According to Mil.R.Evid 404(b):

Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, oppor-

---

**1.** Because we rule *infra* that the statement was inadmissible under Mil.R.Evid. 404(b), Manual for Courts–Martial, United States, 1984, we need not decide whether the statement was involuntary under Article 31, Uniform Code of Military Justice, 10 USC § 831. We offer the caveat, however, that "the subtleties of the superior-subordinate relationship and the conditioned response, consciously created from the first day of basic training, to respond almost unthinkingly to the wishes of a military superior" have led "us to interpret Article 31(b) as being broader in the scope of its protection than is the mandate of *Miranda* [v. *Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) ]." *United States v. Ravenel*, 26 MJ 344, 349 (CMA 1988).

**2.** Appellant did not contest the issue of authorship of the six checks charged under Charge I. Part of appellant's defense for the three checks under Charge II, however, was that his brother may have mistakenly written the checks.

tunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Under that rule of evidence, the "sole test ... is whether the evidence of the misconduct is offered for some purpose other than to demonstrate the accused's predisposition to crime and thereby to suggest that the factfinder infer that he is guilty, as charged, because he is predisposed to commit similar offenses." *United States v. Castillo,* 29 MJ 145, 150 (CMA 1989).

■ Evidence of prior misconduct which shows motive or a common plan or scheme is admissible. *See United States v. McIntosh,* 27 MJ 204 (CMA 1988). "[T]emporal remoteness," however, "depreciates the probity of the" proffered uncharged misconduct or prior offense. *United States v. Beechum,* 582 F.2d 898, 915 (5th Cir.1978), *cert. denied,* 440 U.S. 920, 99 S.Ct. 1244, 59 L.Ed.2d 472 (1979). Further, the probative value of evidence of other crimes or bad acts to show motive or intent must not be substantially outweighed by its unfair prejudicial effect. Mil.R.Evid. 403.[3] Finally, a military judge should provide a limiting instruction to the court members upon request to ensure that the evidence is considered for the proper purpose under Mil.R.Evid. 404(b) and not for inferring that the accused is simply a bad person. *United States v. McIntosh, supra.*

■ The record evinces that appellant's gambling, his affair with another woman which was costing him extra money, and

his mortgage problems were all resolved in the summer of 1985. The bad checks for which appellant was tried, however, were all written over a year later. The military judge's "[c]ommon sense" determination that these were part of an ongoing scheme was question-begging when the alleged problems which might otherwise provide a motive or intent for writing bad checks were resolved over a year before the bad checks were written.

Under Mil.R.Evid. 404(b), there was no nexus between the year-old events and the bad checks to establish them as evidence of motive or intent, particularly since appellant had not yet presented any evidence disputing intent. *United States v. Gamble,* 27 MJ 298 (CMA 1988). Without any evidence that appellant had slipped back into gambling and extramarital affairs, the Government's theory and the military judge's finding that appellant must still have had these problems was too conjectural to have substantial probative value, and the statement should not have been admitted.[4] *See* Mil.R.Evid. 403.

Prejudice to appellant is apparent by his having to defend himself in his own case-in-chief for an Article 15 offense that occurred over a year before the trial. Appellant was made to explain that he was still attending Gamblers Anonymous meetings, but that he had not had any problems with gambling. Appellant was then made to explain the details of an extramarital affair which had terminated over a year before

---

**3.** The necessity for an evaluation of the prejudicial effect is enhanced because, under Mil.R. Evid. 404(b), a low threshold of proof exists for admissibility of evidence of other misconduct: such evidence is admissible if the judge "concludes that the factfinder could reasonably find by a preponderance of the evidence that the other misconduct had occurred, even though the judge himself" might "not make such a finding." *United States v. Castillo,* 29 MJ 145, 151 (CMA 1989). *See Huddleston v. United States,* 485 U.S. 681, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988).

**4.** Although not raised on appeal, we have reservations whether the statement could have been admitted without violating Mil.R.Evid. 410. An accused's statements covered by Mil.R.Evid. 410

include statements made "outside formal plea negotiations," and they will not be admitted at criminal proceedings against an accused. *Cf. United States v. Barunas,* 23 MJ 71, 75 (CMA 1986); *see United States v. Brabant,* 29 MJ 259, 265 (CMA 1989) (Cox, J., concurring in part and dissenting in part). The Editorial Comment for Mil.R.Evid. 410 in S. Saltzburg, L. Schinasi, and D. Schlueter, *Military Rules of Evidence Manual* (2d ed.1986), states that the rule should be read to mean that such statements should "*never* be used at any court-martial against the accused who initiated them." *Id.* at 397. *But see United States v. Cross,* 638 F.2d 1375, 1379–80 (5th Cir.1981) (statements made to Government in contemplation of leniency but not in contemplation of pleading guilty are not within purview of Fed.R.Evid. 410).

trial. Although not a *sua sponte* duty, the judge could have given a limiting instruction, which may have purged the prejudicial effect. *United States v. McIntosh, supra.*

The decision of the United States Army Court of Military Review is reversed. The findings of guilty and the sentence are set aside. The record of trial is returned to the Judge Advocate General of the Army. A rehearing may be ordered.

Chief Judge EVERETT and Judge SULLIVAN concur.